**Robert ARMSTRONG, Plaintiff,**

v.

**NEW YORK STATE COMMISSIONER OF CORRECTION, Walter Fogg (Superintendent), Thomas A. Davis (Dep. Supt./Sec.), Joseph A. Demskie (Lieutenant), Dennis M. Conroy (Sergeant), Defendants.**

**No. 79–CV–753.**

United States District Court,
N. D. New York.

July 15, 1982.

Stephan G. Schick, Monticello, N. Y., for plaintiff.

Poskanzer, Hessberg, Blumberg, Dolin, Barba, Greisler & Trombly, Albany, N. Y., for defendant Walter Fogg; Kenneth J. Connolly, Albany, N. Y., of counsel.

Higgins, Roberts, Beyerl & Coan, P. C., Schenectady, N. Y., for defendant Thomas A. Davis; William P. Willig, Schenectady, N. Y., of counsel.

Cook, Tucker & Netter, P. C., Kingston, N. Y., for defendant Joseph A. Demskie; Robert E. Netter, Kingston, N. Y., of counsel.

Raab & Raab, Kingston, N. Y., for defendant Dennis M. Conroy; Howard Raab, Kingston, N. Y., of counsel.

## MEMORANDUM–DECISION and ORDER

MINER, District Judge.

### I

Plaintiff, a corrections officer, instituted this civil rights action after he was subjected to a body cavity search at his place of employment, the Eastern Correctional Facility. The action is brought pursuant to 42 U.S.C. § 1983, and jurisdiction is predicated upon the provisions of 28 U.S.C. § 1331 and 1343. The defendants in this action are Walter Fogg, Superintendent of the correctional facility; Thomas Davis, Deputy Superintendent of Security; Lieutenant Joseph Demskie and Sergeant Dennis Conroy.[1] Before the Court are motions by all of the defendants for summary judgment. Fed.R.Civ.P. 56.

### II

It is well settled that a motion for summary judgment may only be granted if this

---

1. By stipulation, Thomas Coughlin III, Commissioner of the New York State Department of Correctional Services, was dropped as a defendant in this action.

Court determines that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In addition, the opposing party's version of the facts, and all reasonable inferences which can be drawn therefrom, must be accepted as true for the purposes of the motion. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438 (2d Cir. 1980); *see also Hill v. A–T–O, Inc.*, 535 F.2d 1349 (2d Cir. 1976).

Plaintiff claims that a pat frisk of incoming employees was being conducted by prison authorities when he reported for work at the Eastern Correctional Facility on June 26, 1979. Immediately upon entering the facility, plaintiff alleges that he was removed from his place in line and was escorted into a windowless conference room, where, in the presence of Sergeants Conroy and Rich, he was told to empty his pockets and remove his clothing. When the plaintiff refused to comply, Lieutenant Demskie was summoned and plaintiff again was ordered to strip. At this point he removed his outer garments but still refused to remove his underwear. Thereafter, faced with an ultimatum from Lieutenant Demskie to submit to the strip frisk or face disciplinary proceedings, plaintiff consented to an inspection of his body cavities. Apparently, no contraband was found, and plaintiff was allowed to dress and report for work.

It is the defendants' contention that, prior to initiating the search on June 26, 1979, they had received information that some employees were transporting drugs into the prison. Based upon this information, Superintendent Fogg authorized Deputy Superintendent Davis to supervise an appropriate search of the facility's employees. Pursuant to this authorization, the prison's employees were searched as they reported in for work at the facility. It appears that most of the employees were subjected to a pat frisk or were allowed to enter without being searched at all. Certain employees, however, including the plaintiff, had been pre-selected by prison officials for the strip frisk procedure. These guards, along with others who were chosen at random, were taken individually into the conference room and forced to strip. In all, nine corrections officers were subjected to the body cavity search.

Defendants claim that certain officers were pre-selected for the strip search on the basis of information which implicated them in the smuggling of contraband into the prison. In the case of plaintiff Armstrong, the defendants allege that they had received information from staff members which implicated him in the smuggling in of contraband. None of the defendants, however, has provided this Court with the names of the staff members who supplied this information or with the manner in which the staff members came by the information.

### III

There is little doubt that prisoners, by nature of their incarceration, surrender many of their fourth amendment rights. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Lanza v. New York*, 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962). However, this Court rejects the proposition, urged by the defendants, that prison employees must suffer a diminution in fourth amendment protections equal in extent to that of prison inmates. *Security and Law Enforcement Employees v. Carey*, No. 80 Civ. 906 (S.D.N.Y. Jan. 26, 1981). *Contra Gettleman v. Werner*, 377 F.Supp. 445 (W.D.Pa.1974); *Shaw v. Hutto*, No. 77–0302–R (E.D.Va. Sept. 1977). While such searches are not governed by the traditional probable cause and warrant requirements, *Gettleman v. Werner, supra; Security and Law Enforcement Employees v. Carey, supra; Shaw v. Hutto, supra*, they must nevertheless be found to be reasonable under the circumstances in order to comply with fourth amendment mandates. *See Bell v. Wolfish, supra*, 441 U.S. at 559, 99 S.Ct. at 1882.

This Court recognizes that the smuggling into prison of contraband is indeed a serious problem which threatens the

security of both prisoners and prison employees, and that considerable deference must be paid to the judgment of prison officials in their administration of state penal institutions. *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Preiser v. Rodriguez,* 411 U.S. 475, 491–92, 93 S.Ct. 1827, 1837, 36 L.Ed.2d 439 (1973). Nevertheless, a prison employee does not leave his constitutional protections outside the prison walls, and such searches must be scrutinized in order to determine whether the institution's legitimate security interests outweigh the employee's protected privacy rights. *Security and Law Enforcement Employees v. Carey, supra.* Here the search was particularly degrading and embarrassing, and may only be justified by a showing that warrantless strip searches are necessary in order to maintain institutional security. Alternatively, the defendants must come forward with articulable facts as to why they believed that the plaintiff might have had contraband concealed in his person. *See Black v. Amico,* 387 F.Supp. 88 (W.D.N.Y.1974) (strip search of a prison visitor). Their bare assertions that they had received information that plaintiff was involved in smuggling contraband does not provide the specific details necessary to meet the articulable facts test. Moreover, no showing has been made by the defendants that strip searches were reasonably necessary for the maintenance of institutional security.

In addition, defendants argue that there has been no constitutional violation since Armstrong consented to the search by accepting employment as a corrections officer. According to § 2201.21 of the Correctional Services Employees Manual, "Any employee on Facility property or while on duty is subject to search... [And such] searches may include the employee's person, boxes, packages and any other articles carried by the employee..." This argument is unpersuasive, however, since it is well established that a careful factual inquiry must be undertaken in order to determine whether consent is voluntary under the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). And, as noted in *Secur-*

*ity and Law Enforcement Employees v. Carey, supra,* at 7, "the coercion and duress implicit in an employer's threat of disciplinary action is no less real than that of a beating in the station house." *See Garrity v. State of New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).

Therefore, if such searches are unreasonable within the meaning of the fourth amendment's proscription, a government employer cannot require that its employees submit to them as a condition of employment. However, the plaintiff's advance notice that he might be subject to such a search may nevertheless be considered in determining its reasonableness, since an employee who is offended will have the opportunity to seek alternative employment. *Security and Law Enforcement Employees v. Carey, supra.*

Accordingly, since the defendants have failed to establish that the search of the plaintiff was reasonable under the circumstances, and since the record establishes that the plaintiff did not consent for fourth amendment purposes, the motions for summary judgment are denied.

It is so Ordered.