OHIO CIVIL SERVICE EMPLOYEES ASSOCIATION, et al., Plaintiffs–Appellees,

v.

Richard P. SEITER, et al., Defendants–Appellants.

Nos. 85–3836, 87–3040.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 12, 1988.

Decided Oct. 4, 1988.

**1172**

Gene W. Hollicker, Chief, Federal Litigation Sec., Columbus, Ohio, William J. Edwards, Asst. Atty. Gen., William J. Steele, argued, for defendants-appellants.

Dennis R. Morgan, Columbus, Ohio, for Intervenor.

Craig Becker, Lead Counsel, argued, Kirschner, Weinberg, Dempsey, Washington, D.C., Marc Mezibov, Furer, Moskowitz & Mezibov, Cincinnati, Ohio, for plaintiffs-appellees.

Before ENGEL, Chief Judge *, and KENNEDY and KRUPANSKY, Circuit Judges.

ENGEL, Chief Judge.

The single issue in this appeal is whether Ohio prison officials are entitled to qualified immunity from a suit arising from their decision to authorize strip and body cavity searches of prison employees. Since we conclude that the Fourth Amendment right to be free of such searches was not clearly established at the time of their implementation, we hold that the Ohio officials were indeed immune from personal liability.

Plaintiffs, nine present and former prison guards employed by the Ohio Department of Rehabilitation and Correction and their labor union, initiated this action against defendants, the director of the department and eleven present and former superintendents, on February 22, 1985, alleging that defendants had conducted strip searches and body cavity searches on them without probable cause or search warrants from 1979 until the date the complaint was filed. Plaintiffs further allege that some of the searches were motivated by race, some were in retaliation for plaintiffs' exercise of their First Amendment rights and some were intended as a means of discipline. Plaintiffs claim that these actions constitute violations of 42 U.S.C. § 1983 and 42 U.S.C. § 1985.

The defendants moved for judgment on the pleadings, alleging that they were entitled to a defense of qualified good faith immunity from suit because the acts that plaintiffs alleged did not violate clearly established statutory or constitutional rights. The district court, in an order of October 1, 1985, denied defendants' motion, finding that their use of consent forms was evidence that they should have hesitated before conducting warrantless searches.

Defendants appealed this ruling to our court. On January 24, 1986, 785 F.2d 309, we remanded the case to the district court, noting that it had failed to make explicit findings that defendants' alleged acts had violated clearly established law when they were allegedly committed. The district court issued an opinion on December 23, 1986, reaffirming its previous opinion that the defendants could not assert good faith immunity.

In denying the defense of qualified, good faith immunity, the district court relied on *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), stating: "*Katz* sets forth a *per se* rule of the unlawfulness of any warrantless search not falling within an articulated exception, and recognizes a basic constitutional right to be

* The Honorable Albert J. Engel assumed the     duties of Chief Judge effective April 1, 1988.

free from unreasonable searches, unless the conduct alleged falls within an exception to the *per se* rule." The court held that given the per se rule, a Fourth Amendment violation had been clearly established, even though neither this circuit nor the Supreme Court had ever confronted the specific issue of strip and body cavity searches of prison employees. The court further relied on *Security & Law Enforcement Employees, District Council 82 v. Carey,* 737 F.2d 187 (2d Cir.1984), which held that strip and body cavity searches of prison employees could not be conducted without at least a reasonable suspicion of wrongdoing. The court stated that this decision added to the evidence that clearly established the protected right in this case.

Until recently, the controlling Supreme Court case on qualified immunity, *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), had set out a two part standard for determining whether immunity applied to a particular situation. Under *Strickland* an official:

> is not immune from liability for damages under § 1983 if [1] he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or [2] if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury....

*Id.* at 322, 95 S.Ct. at 1001. The first standard is known as the objective test while the second is referred to as the subjective test.

The law of qualified immunity was dramatically changed by the Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). First, the Court stated the reasons for cloaking public officials with qualified immunity:

> In situations of abuse of office, an action for damages may offer the only realistic avenue for vindication of constitutional guarantees.... At the same time, however, it cannot be disputed seriously that claims frequently run against the innocent as well as the guilty—at a cost not only to the defendant officials, but to

society as a whole. These social costs include the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office. Finally, there is the danger that fear of being sued will "dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties." *Gregoire v. Biddle,* 177 F.2d 579, 581 (CA2 1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950).

*Id.* at 816–17, 102 S.Ct. at 2737–38. The Court held that bare allegations of malice are insufficient to defeat a claim of qualified immunity if a government official's conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. Thus, the *Harlow* opinion virtually eliminated the subjective test.

Decisions rendered after *Harlow* have reaffirmed the Court's commitment to an objective test. In *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984), the Court stated that:

> *Harlow v. Fitzgerald* rejected the inquiry into state of mind in favor of a wholly objective standard.... Whether an official may prevail in his qualified immunity defense depends upon the "objective reasonableness of [his] conduct as measured by reference to clearly established law." No other "circumstances" are relevant to the issue of qualified immunity.

*Id.* at 191, 104 S.Ct. at 3017 (citations omitted). Recently, in *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Court again upheld the objective test, stating that a government official "is immune unless his actions violated clearly established law." *Id.* at 530, 105 S.Ct. at 2817. Thus, it is now plain that we must confine ourselves on this appeal to a determination of whether the Fourth Amendment encompasses the right of prison employees to be free from warrantless strip and body cavity searches and, if so, wheth-

er that right was clearly established at the time the searches took place.

The district court did not discuss which party must plead or prove which aspects of the qualified immunity issue. However, in *Dominique v. Telb*, 831 F.2d 673 (6th Cir. 1987), we held that if a defendant raises a qualified immunity defense, a plaintiff must plead that any constitutional violation alleged has been clearly established:

> [W]here as here plaintiff seeks damages from the defendant in his individual capacity for an act committed under color of law, we believe that he should normally include in the original complaint all of the factual allegations necessary to sustain a conclusion that defendant violated clearly established law. If he does not, however, and if a qualified immunity challenge is made to the complaint, then, we believe, the court must accord the plaintiff an opportunity to come forward with such additional facts or allegations that show not only violations of his constitutional rights, but also that these rights were so clearly established when the acts were committed that any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct. *Anderson v. Creighton*, [—— U.S. ——] 107 S.Ct. at 3039 [97 L.Ed.2d 523 (1987)].

*Id.* at 676. On the issue of the burden of proof, we stated:

> Even though qualified immunity is an affirmative defense, the district court should not require the defendant to prove, upon penalty of denial of his motion, that the conduct plaintiff alleged did not violate clearly established law. Nor does any dispute regarding whether defendant should have known such conduct violated clearly established law create "a genuine issue of material fact" so as to preclude summary judgment. Rather, under these circumstances, the district court must decide the purely legal question of whether the law at the time of the alleged action was clearly established in favor of the plaintiff.

*Id.* Since *Harlow v. Fitzgerald* eliminated the subjective test, the court is left with a pure question of law: Did the conduct complained of constitute a clearly established violation of statutory or constitutional law at the time that it occurred?

The district court erred in holding that *Katz, supra,* coupled with the absence of precedent exempting searches of prison employees from the "per se" rule of *Katz* was sufficient to defeat a finding of qualified immunity. The specific issue in *Katz* was addressed not to body cavity searches but to whether electronic surveillance of calls placed from a public telephone booth constituted a Fourth Amendment violation. Prior to *Katz*, the Supreme Court had decided similar cases by determining whether the search was of a "constitutionally protected area."[1] 389 U.S. at 350, 88 S.Ct. at 510. However, Justice Stewart's majority opinion rejected this formula, stating that "the Fourth Amendment protects people, not places." *Id.* at 351, 88 S.Ct. at 511.

The Court was unimpressed by the government's arguments that a telephone booth was clearly visible and that no physical penetration of the booth was undertaken in order to maintain the surveillance. Instead, the Court held that the government was required to obtain a search warrant before undertaking this sort of electronic surveillance. Justice Stewart cast the ruling in broad terms, stating that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Id.* at 357, 88 S.Ct. at 514.

Justice Harlan's brief concurrence in *Katz*, while agreeing with the majority, observed:

> As the Court's opinion states, "the Fourth Amendment protects people, not places." The question, however, is what protection it affords to those people. Generally, as here, the answer to that question requires reference to a "place." My understanding of the rule that has emerged from prior decisions is that

there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as "reasonable."

*Id.* at 361, 88 S.Ct. at 516 (Harlan, J., concurring). This two-part test has been used by the Supreme Court on several more recent occasions. *See, e.g., New York v. Class,* 475 U.S. 106, 112, 106 S.Ct. 960, 965, 89 L.Ed.2d 81 (1986); *Oliver v. United States,* 466 U.S. 170, 177, 104 S.Ct. 1735, 1740, 80 L.Ed.2d 214 (1984); *Smith v. Maryland,* 442 U.S. 735, 740–41, 99 S.Ct. 2577, 2580–81, 61 L.Ed.2d 220 (1979). Our court has adopted the test as well. *See, e.g., Dow Chemical Co. v. United States,* 749 F.2d 307, 311–12 (6th Cir.1984); *aff'd,* 476 U.S. 227, 106 S.Ct. 1819, 90 L.Ed.2d 226 (1986); *United States v. Cassity,* 720 F.2d 451, 456 (6th Cir.1983); *United States v. Trickey,* 711 F.2d 56, 58 (6th Cir.1983); *United States v. Bailey,* 628 F.2d 938, 941 (6th Cir.1980).

Thus, the district court was required to find both a subjective expectation of privacy and an approval of that expectation by society, in order to avoid a finding of qualified immunity. However, the court made no such finding. Instead, it conceived of the *Katz* opinion as being sufficient, of its own merit, to defeat a qualified immunity claim, without any inquiry into the specific rights at issue in the instant case. This was error.

Before determining whether it is clearly established that prison employees have a Fourth Amendment right to be free of strip and body cavity searches undertaken without a search warrant, we must determine what precedent is to be used to decide whether the alleged right in question is clearly established. This presents two questions: (1) Which courts' decisions may a district court rely on? and (2) To what extent may a court analogize to similar decisions in somewhat different contexts?

The Supreme Court has done little more than state that courts can rely on relevant Supreme Court, circuit and district opinions in deciding whether a right is clearly established.[1] The Court's failure to elaborate further leaves us with no resolution of the question of what effect district courts in our circuit should give to decisions by other district courts and other circuits.

We recently addressed this question in *Davis v. Holly,* 835 F.2d 1175 (6th Cir. 1987). In *Davis,* a panel of our court considered whether administrators of a state mental hospital had violated a clearly established right by failing to prevent the rape of a patient and by failing to prevent the patient's violational self-injury. On the question of rape, we found that other courts had ruled that there was a clearly established right for a mental patient to live in a safe environment. However, we found that a decision of our court, *Puckett v. Cox,* 456 F.2d 233 (6th Cir.1972), which held that a constitutional claim could not be made out unless there was a showing that injury had occurred due to something other than an isolated incident of negligence, was controlling. Since the court found no evidence of similar incidents at the institution, it concluded that this case fell within the confines of *Puckett* and therefore qualified immunity applied.

The volitional self-injury issue in *Davis* proved more troublesome because there was no controlling authority in this circuit. In essence, plaintiff's case was based on a single circuit opinion from outside of our jurisdiction, *Harper v. Cserr,* 544 F.2d 1121 (1st Cir.1976), which held that a constitutional claim based on failure to prevent self-injury was possible. We found this precedent insufficient to clearly establish the law on this question:

> Unless the defendants in this case (all of whom are presumably non-lawyers) had a quite extraordinary familiarity with the contents of the Federal Report-

---

1. The Supreme Court specifically reserved this question in *Harlow,* stating that "[a]s in *Procunier v. Navarette,* 434 U.S. [555] at 565 [98 S.Ct. 855, 861, 55 L.Ed.2d 24 (1978)]" we need not define here the circumstances under which "the state of the law" should be "evaluated by reference to the opinions of this Court, of the Court of Appeals, or of the local District Court." 457 U.S. at 818 n. 32, 102 S.Ct. at 2738 n. 32.

er, it is difficult to see how an admittedly novel decision from another circuit could reasonably be expected to have changed the defendants' perception of how the Constitution is understood in this circuit. *Harlow v. Fitzgerald* teaches that if a qualified-immunity defense is to be defeated on the ground that the constitutional violation was obvious, the constitutional rights in question must have been "clearly established" and must have been the sort that a "reasonable person" would have known about. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. A single idiosyncratic opinion from the court of appeals for another circuit was hardly sufficient to put the defendants on notice of where this circuit or the Supreme Court might come out on the issue in question.

*Id.* at 1182.[2] With this opinion in mind, we consider the precedent relied upon by appellees in the instant case.

Appellees have brought to our attention two circuit court opinions and two district court opinions, none of which is from our circuit, suggesting that strip and body cavity searches of prison employees may violate Fourth Amendment rights. *McDonell v. Hunter*, 809 F.2d 1302 (8th Cir.1987); *Carey, supra; Adrow v. Johnson*, 623 F.Supp. 1085 (N.D.Ill.1985); *Armstrong v. New York State Commissioner of Corrections*, 545 F.Supp. 728 (N.D.N.Y.1982). Even these cases are not entirely favorable to appellees.

In *Carey*, the Second Circuit found that prison officials who ordered strip and body cavity searches in 1984 "operated in an area in which the law was not charted clearly." 737 F.2d at 211. Thus, although the court found that there was a constitutionally protected right, it further held that New York's prison administrators were entitled to qualified immunity. The Eighth Circuit did not have an opportunity to determine whether the right was clearly established in its jurisdiction, because the

*McDonell* case involved only an injunction, not a claim for damages against individual administrators.

In *Adrow*, the court held that as of October, 1984 it was not clearly established in the Northern District of Illinois that prison employees had a right to be free from the searches in question. The court stated that "[v]ery few opinions have addressed the issue of what standard applies to intrusive searches of prison employees." 623 F.Supp. at 1089. The court refused to rely on *Carey*, stating that "it is not an opinion of this Circuit." *Id.* at 1090. Finally, *Armstrong* does not discuss qualified immunity. Thus, appellees have not presented any controlling authority in our circuit and they have also failed to produce any direct authority for the proposition that the Fourth Amendment right in question here was clearly established during the time period in question.

While no two cases are completely analogous, there must be limitations upon the extent to which a court may rely on holdings in contexts other than the one being considered to demonstrate that a principle has been clearly established. In the instant case, appellees argue that several circuits have afforded some Fourth Amendment protection to prison visitors. *See, e.g., Blackburn v. Snow*, 771 F.2d 556 (1st Cir.1985); *Thorne v. Jones*, 765 F.2d 1270 (5th Cir.1985); *Hunter v. Auger*, 672 F.2d 668 (8th Cir.1982), and that this clearly establishes the Fourth Amendment rights of prison employees. We disagree.

The Supreme Court's recent opinion in *Anderson v. Creighton*, —— U.S. ——, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), sheds light on the Court's position regarding the contextual similarity required for the finding of a clearly established right. The Court stated:

> The operation of this ["clearly established"] standard, however, depends substantially upon the level of generality at

---

**2.** Our court has also found the opinions of other circuits to be insufficient to clearly establish a constitutional right in our circuit in a more recent opinion, *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir.1988) ("We should focus on wheth-

er, at the time defendants acted, the rights asserted were clearly established by decisions of the Supreme Court or the courts of this federal circuit.").

which the relevant "legal rule" is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow.* Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.... It should not be surprising, therefore, that our cases establish that the right that the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right ... the unlawfulness must be apparent.

*Id.* at ——, 107 S.Ct. at 3038–39. *Anderson* concerned a warrantless search of a home by police officers in search of a fugitive. The Eighth Circuit had held that since there were no exigent circumstances, the search was unreasonable. Since unreasonable searches that fall within no exception to the Fourth Amendment are clearly unconstitutional, the court found that the police had violated a clearly established right. The Supreme Court reversed, finding that the court had not looked at the more specific question of whether it was clearly established that the circumstances at issue in this case were not exigent. *Id.* at 3040.

Given the language cited from *Anderson, supra,* it must follow that *Katz* cannot furnish an authoritative, "clearly established" rule forewarning the defendants here on pain of personal liability. *Katz,* involving wire tapping, does not remotely relate to the kind of activity involved here. In the language of *Anderson,* finding a constitutional right to be clearly established based on *Katz* would require applying the qualified immunity doctrine at a level of generality that provides no objectively reasonable test for measuring the kind of activity in the case at bar. This activity deals uniquely with the expectations of persons working daily in a close, dangerous environment, filled with temptations and very special and understood concerns for prison discipline and security.

Likewise, we find that, following *Anderson,* prisoner visitor cases themselves are not so sufficiently similar as to merit reasonable reliance upon them as a guide to proper conduct. Not only do prison employees spend more time in prisons, but they also have more access to sensitive areas of the facility. Thus, they pose an even greater potential security risk than the high risk already posed by visitors. Further, the employees volunteered to work in a security conscious environment. While visitors do volunteer to visit the prison, it is unlikely that they chose to place their family members or friends into incarceration. For these reasons, we hold that the visitor cases are inapposite.

Our review of the Supreme Court's decisions and of our own precedent leads us to conclude that, in the ordinary instance, to find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals or itself. In an extraordinary case, it may be possible for the decisions of other courts to clearly establish a principle of law. For the decisions of other courts to provide such "clearly established law," these decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting. Here a mere handful of decisions of other circuit and district courts, which are admittedly novel, cannot form the basis

for a clearly established constitutional right in this circuit.

It must be borne in mind, however, that ample room yet remains for the establishment of new principles of constitutional law notwithstanding the qualified immunity doctrine. Constitutional rights may yet be pursued in many other avenues, such as declaratory and injunctive relief, motions to suppress, actions against municipalities not clothed with qualified immunity, and the like. A proper concern for the need of public officers to act forthrightly and without timidity prompted the Supreme Court in *Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), to open up the liability of municipalities, overruling *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1967). Thus, the Court created a very real trade-off between the limitation upon individual liabilities of government officials spelled out in the qualified immunity decisions, *see, e.g., Mitchell, supra; Harlow, supra,* and the creation of new municipal liability in *Monell.*

The only issue currently before our court is the appropriateness of the district court's denial of the appellants' claims of qualified immunity. It would be inappropriate for us to decide at this time the question of what protection, if any, the Fourth Amendment affords to the prison employees in question. We only observe that the unreasonableness of the searches as a matter of constitutional adjudication was certainly not clearly established at this juncture, in this circuit, and we see no need to render an advisory opinion on the question here. We simply hold that the district court erred in finding that the law in this area is clearly established. As this is a pure question of law, we need not remand this question to the district court. Thus, the judgment of the district court is REVERSED and the case is REMANDED for trial on the remaining issues.