927 F.2d 603
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Edward R. BUTLER, Plaintiff-Appellee,
v.
Richard P. SEITER, et al., Defendants-Appellants.
 No. 90-3474.
 United States Court of Appeals, Sixth Circuit.
 March 7, 1991.
 
 On Appeal from the United States District Court for the Southern District of Ohio, No. 86-01581; Holschuh, C.J.
 S.D.Ohio
 AFFIRMED.
 Before RALPH B. GUY, Jr. and BOGGS, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, Edward Butler, a prisoner at the Chillicothe Correctional Institution (CCI), brought this 42 U.S.C. Sec. 1983 action alleging that the warden and other prison officials violated his eighth amendment right to be free from cruel and unusual punishment by ignoring his medical needs. Defendants filed a motion to dismiss on several grounds, including qualified immunity. The district court denied the motion, and defendants bring this interlocutory appeal on the qualified immunity issue only. We affirm, and only briefly expand on the district court's well-reasoned opinion.
 
 I.
 
 2
 Plaintiff was incarcerated at the CCI in November 1985. Upon his admission to the prison, he was given a standard physical examination, at which time he requested medical treatment for a foot problem that was causing him significant pain. He complained repeatedly about the problem to prison officials who were responsible for ensuring that adequate care was given. He received no care during this period, even though medical personnel at the CCI referred him, at least twice, to the podiatry clinic for special attention. Approximately 15 months after his initial medical examination, in February 1987, Butler was seen in the podiatry clinic and thereupon referred to the orthopedic clinic for evaluation for surgery on his foot. Butler was seen in the orthopedic clinic in July 1987 and was scheduled for surgery at the Ohio State University Hospital. He did not have surgery until June 1988.
 
 
 3
 Butler filed this suit on December 22, 1986, and then amended his complaint on December 8, 1989. He claims that throughout the period that he was in the CCI he needlessly endured great pain and discomfort; was partially disabled; and, in addition to experiencing foot problems relating to walking and running, also suffered neck and back pain. Plaintiff alleges in his amended complaint[1] that the prison warden (Arthur Tate, Jr.); the dispensary administrator (William McClelland), who was responsible for the operation of the clinics and other medical services programs at the CCI; and the clinic coordinator (Ralph Coyle), who was responsible for scheduling clinical and medical referrals, were all aware of his situation and that their actions and inaction constituted deliberate indifference to his medical needs. He also asserted that the CCI personnel were inadequately trained and there were no proper regulations or procedures to ensure that clinic referrals were scheduled or completed.
 
 II.
 
 4
 The defendants' claim of qualified immunity is based on two suppositions: first, the law stating that systemic deficiencies could constitute deliberate indifference in violation of the eighth amendment was not clearly established at the time the cause of action arose; and, second, that plaintiff's injuries at the time of the cause of action did not create a "serious medical need" sufficient to involve eighth amendment considerations. We find no merit to either contention.
 
 
 5
 Qualified immunity shields government officials performing discretionary functions from civil damages, as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).
 
 
 6
 Qualified immunity accommodates two important competing interests. On the one hand, an action for damages may be "the only realistic avenue for vindication of constitutional guarantees" where officials violate the public trust. Harlow, 457 U.S. at 814, 102 S.Ct. at 2736. Yet, the "threat of liability can create perverse incentives that operate to inhibit officials in the proper performance of their duties." Forrester v. White, U.S. , , 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988).
 
 
 7
 Poe v. Haydon, 853 F.2d 418, 423 (6th Cir.1988) (emphasis in original), cert. denied, 488 U.S. 1007 (1989). The qualified immunity defense "provides ... protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).
 
 
 8
 The standard adopted in Harlow and reaffirmed in subsequent decisions is an objective one: "Whether an official may prevail in his qualified immunity defense depends upon the 'objective reasonableness of [his] conduct as measured by reference to clearly established law.' " Ohio Civil Serv. Employees Ass'n v. Seiter, 858 F.2d 1171, 1173 (6th Cir.1988) (citations omitted).
 
 
 9
 Defendants assert that the law concerning prison officials' duty to treat prisoners properly was unclear at the time the plaintiff's complaint arose. This court has addressed the standard for determining whether the law in an area is clearly established, holding that, "in the ordinary instance, to find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals or itself." Id. at 1177. We find no question that the right to receive treatment for a serious injury or medical condition was a clearly established constitutional right at all times relevant to this case.
 
 
 10
 In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court concluded "that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.' " Id. at 104 (citing Gregg v. Georgia, 428 U.S. 153, 173). The eighth amendment, which "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.' " id. at 102 (citations omitted), applies to treatment of incarcerated individuals as well. "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.... In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose." Id. at 103.
 
 
 11
 In this case, construing the complaint in the light most favorable to the plaintiff and accepting the allegations as true, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Roth Steel Prods. v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir.1983), there is little doubt that plaintiff's condition warranted medical care by knowing prison officials. His pain was constant, he had difficulty even walking, and his condition was aggravated by the distress he experienced in his back and neck. Prison officials were aware of these conditions.
 
 
 12
 Defendants suggest, however, that Estelle does not govern their obligation to provide coverage. They suggest that Estelle was modified and narrowed by Anderson v. Creighton, 483 U.S. 635 (1988), which stated that "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense[.]" Id. at 640. Applying this standard, defendants assert, invites a more stringent examination than is provided by the application of Estelle. There simply were no cases on record, they argue, which offer such particularized holdings that "a reasonable official would understand that what he is doing violates that right." Id. We disagree.
 
 
 13
 As the district court correctly concluded, Estelle is the proper standard for analyzing the defendants' qualified immunity defense in this context. The decision in Anderson does not mean that there must have been a previous decision which ruled that the very action in question be held unlawful. Adoption of such a strict standard would tend to convert qualified immunity into absolute immunity. Although Anderson cautions against converting "the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights," 483 U.S. at 639, the request for care in this case, to gain treatment for a severely injured and extremely painful foot, was certainly not a request relative to an abstract right.
 
 
 14
 Even if we were to assume arguendo that Estelle, by itself, is not controlling here, we find that this court has ruled, both prior to and since Estelle, that a prisoner states a cause of action "when he alleges that prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir.1976). Similarly, in Byrd v. Wilson, 701 F.2d 592 (6th Cir.1983), we stated that "[t]his circuit has followed Estelle and recognized the propriety of such actions against prison authorities in Westlake ... [in which] this Court held that a prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering." Id. at 595.
 
 
 15
 Defendants also assert that the specific injuries about which plaintiff complained to prison officials were not serious enough to warrant care by prison officials. They cite several cases which they claim demonstrate that plaintiff's injuries were trivial in nature and not warranting care. We find no need to address these individual factual questions here, however, as we agree with the conclusion stated in the district court's opinion that these attempts by defendants to focus attention "on whether a particular medical condition constitutes a serious medical need or whether certain conduct constitutes deliberate indifference are unavailing. These are factual issues[,] the ultimate resolution of which will determine whether the clearly established right to medical treatment has in fact been violated."[2] (App. 125). As we stated in Westlake:
 
 
 16
 Whether a prisoner has suffered unduly by the failure to provide medical treatment is to be determined in view of the totality of the circumstances. In making this determination the trier of fact should consider the practicalities of the situation including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention.
 
 
 17
 537 F.2d at 860 n. 4 (citing Schmidt v. Wingo, 499 F.2d 70, 75 (6th Cir.1974) (Phillips, J. concurring)).
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 The only party remaining from the original complaint is Arthur Tate, the CCI warden. Among the motions for dismissal denied by the district court judge was one claiming that the amended complaint violated the statute of limitations
 
 
 [2]
 We voice no opinion as to whether defendants may be entitled to a summary judgment, either on the merits or on the issue of qualified immunity, based on these issues. See Poe v. Haydon, 853 F.2d 418, 424-426 (6th Cir.1988). Our holding is limited to agreeing with the district judge that dismissal on the basis of qualified immunity, at this juncture, was inappropriate