Cathy PEELMAN, Plaintiff,

v.

DELAWARE JOINT VOCATIONAL
SCHOOL DISTRICT BOARD OF
EDUCATION, et al., Defendants.

No. C2-88-0545.

United States District Court,
S.D. Ohio, E.D.

May 3, 1991.

Mark Alicen Foley, Columbus, Ohio, for plaintiff.

Robert Dean Jollay, Jr. and Grey Wilbur Jones, Columbus, Ohio, for defendants.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This matter is presently before the Court pursuant to the defendants Frass, Miller, Huffman and Cline's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.[1]  The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and venue is proper in the Southern District of Ohio, pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## FACTS

The plaintiff Cathy Peelman is a teacher certified by the state of Ohio in several subject areas.  During the four school years preceding the 1988–89 school year, the plaintiff was employed by the Delaware Joint Vocational School Board of Education under a series of limited contracts.  During this time, the plaintiff was an active member of the Delaware Joint Vocational School Teachers' Association and the Ohio Education Association, organizations which the plaintiff describes as labor unions.  The plaintiff's activity in these organizations caused her on several occasions to voice views and opinions contrary to those of the Delaware Joint Vocational School District's administration.

On April 29, 1988, the Delaware Joint Vocational School Board of Education voted not to renew the plaintiff's contract for the 1988–89 school year.  On May 17, 1988, the plaintiff filed a civil rights action pursuant to 42 U.S.C. § 1983 (deprivation of constitutional rights under color of law) and § 1985 (conspiracy to deprive of rights, privileges and immunities).  In her complaint, the plaintiff named The Delaware Joint Vocational School District Board of Education as a defendant in its corporate capacity, as well as naming Melvin R.

---

**1.** Also named as defendants within this case are the same defendants in their official capacities, as well as Delaware Joint Vocational School District Board as an entity capable of suing and being sued pursuant to Ohio Rev.Code § 3313.17.

Frass, the Superintendent of the school district, and E.J. Miller, Louis Huffman, and Kenneth Cline, all members of the school board, as defendants in their individual capacities.

The substance of the plaintiff's complaint is that the school board's decision not to renew her contract was motivated by anti-union animus and therefore violated her constitutional right of Free Association as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

## STANDARD OF REVIEW

In considering this motion, the Court is mindful that the standard for summary judgment "mirrors the standard for a directed verdict under [Rule 50(a)], which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) citing *Brady v. Southern Ry. Co.,* 320 U.S. 476, 479–480, 64 S.Ct. 232, 234–235, 88 L.Ed. 239 (1943). Thus, the Supreme Court concluded in *Anderson* that a judge considering a motion for summary judgment must "ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair minded jury could return a verdict for the plaintiff on the evidence presented." 477 U.S. at 252, 106 S.Ct. at 2512.

Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In essence, the inquiry is whether the evidence presented a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

Such an inquiry necessarily implicates the evidentiary standard of proof that would apply at the trial on the merits. As a result, the Court must view the evidence presented through the prism of the substantive evidentiary burden. Rule 56(e) therefore requires that the nonmoving party go beyond the pleadings and by their own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552.

In *Banks v. Rockwell International N. Am. Aircraft Operations,* 666 F.Supp. 1053 (S.D.Ohio 1987) (J. Graham), this district enunciated the importance of granting summary judgments in appropriate situations by stating that: "Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules which are designed to secure the just, speedy and inexpensive determination of every action." *citing, Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553, (quoting Fed.R.Civ.P. 1); *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

Thus, the mere existence of a scintilla of evidence in support of a plaintiff's claim is insufficient—there must be evidence upon which a jury could reasonably find for the plaintiff. Having discussed the Rule 56 standard of review, the Court now turns to the merits.

## LAW AND ANALYSIS

The defendants, Frass, Miller, Huffman, and Cline rely upon the defense of qualified or "good faith" immunity to support their motion for summary judgment. The defense of qualified immunity as recognized in Ohio shields public officials from liability in their individual capacity for failure to

properly perform a duty involving judgment and discretion, where the officer was acting within the scope of his authority, in good faith and without any corrupt motive. *Scot Lad Foods, Inc. v. Secy. of State*, 66 Ohio St.2d 1, 418 N.E.2d 1368 (1981). Under Ohio law, the defense of qualified immunity will shield school board members and officials, such as the defendants in the case at bar, from liability in their individual capacities when sued pursuant to a state law cause of action. However, where public officials are sued in their individual capacity pursuant to the United States Constitution or federal statute, the effect of the federal law upon the state law defense of qualified immunity must be addressed.

In this case, the defendants are being sued in their individual capacities for alleged violation of Title 42 U.S.C. § 1983. Section 1983's effect upon a state law defense of qualified immunity was directly addressed by the Supreme Court in *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1974). In *Wood* the Court limited the scope of such qualified immunity in the context of a lawsuit brought pursuant to § 1983. The Court stated:

> [A] school board member is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of [those] affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury....

*Wood*, 420 U.S. at 322, 95 S.Ct. at 1001. Subsequently however the Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1981), rejected the subjective element of the standard it had adopted in *Wood*, which permitted a public official performing discretionary functions to escape liability by showing that his actions were not taken with malicious intent.

The wholly objective standard retained by the Court in *Harlow* will shield a public official performing discretionary functions from liability in his official capacity only if his "conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. However, because *Wood v. Strickland* involved the application and scope of qualified immunity arising under state law, while *Harlow v. Fitzgerald* involved the application and scope of the qualified immunity of federal executive officials arising under federal law, some questioned the applicability of the *Harlow* decision to a defense of qualified immunity arising under state law. In *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) however, the Court eliminated any question as to the scope of the *Harlow* decision when it applied the wholly objective standard to the state law qualified immunity of state officials sued pursuant to 42 U.S.C. § 1983.

■ Therefore, under the current law as clearly set forth in *Davis v. Scherer*, the defendant state school board officials will only be shielded from liability in their individual capacities for violations of § 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Davis*, 468 U.S. at 197, 104 S.Ct. at 3020, *Ohio Civil Serv. Employee Ass'n v. Seiter*, 858 F.2d 1171, 1173 (6th Cir.1988). In this case, the § 1983 claim brought against the defendants is based upon allegations that the defendants refused to renew the plaintiff's employment contract because they disapproved of her involvement in several teachers' unions. To begin, it is evident that such action, if true, violated the plaintiff's constitutional right of free association. The constitutional right of free association first recognized in *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), has been extended to protect an individual's membership in and involvement with trade unions. *Brotherhood of R.R. Trainmen v. Va.*, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1963), *United Mine Workers v. Ill. State Bar Ass'n*, 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967), *Madison Joint School Dist. v. Wis. Employment Relations Comm'n*, 429 U.S. 167, 97 S.Ct. 421, 50 L.Ed.2d 376 (1976). Further, while

it is true that the plaintiff was working under a limited contract and therefore had no right to continued employment or renewal of her contract, *Matheny v. Frontier Local Board of Education*, 62 Ohio St.2d 362, 405 N.E.2d 1041 (1980), the United States Supreme Court has repeatedly stated:

> [f]or at least a quarter-century, . . . that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, *there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests.* For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to 'produce a result which it could not command directly.' Such interference with constitutional rights is impermissible.

*Rutan v. Republican Party of Ill.,* ⸺ U.S. ⸺, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990).

Finally, the right of free association is without question, a "clearly established . . . constitutional right of which a reasonable person would have known." *Davis*, 468 U.S. at 191, 104 S.Ct. at 3017. The right of free association was first enunciated in *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), and has been frequently discussed and reaffirmed since that time. *See* Symposium: Freedom of Association, 81 Nw.L.Rev. 1 (1986). Therefore, because the same facts which would establish the validity of the plaintiff's claim under § 1983, would serve to deny the defendants the protection afforded by the doctrine of qualified immunity, the defendants may not rely upon such immunity to shield themselves from the plaintiff's § 1983 claim.

■ However, this Court's inquiry into the defendant's motion for summary judgment does not end with the denial of the qualified immunity defense to the defendants. In mistakenly relying upon the overruled subjective good faith standard for qualified immunity, each of the defendants submitted a sworn affidavit testifying that his decision to vote not to renew the plaintiff's teaching contract was made in good faith and was "not motivated by malice, bad-faith, corrupt motive or a deliberate intent to injure the plaintiff . . . or [to] deprive her of her constitutionally guaranteed rights." While these affidavits were of no use in supporting the defendants' reliance upon the defense of qualified immunity, they do serve the unintended purpose of satisfying the burden, placed upon the party moving for summary judgment by Fed.R.Civ.P. 56(c), of showing "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Under this rule,

> "if the movant presents credible evidence that would entitle him to a directed verdict if not controverted at trial, this evidence must be accepted as true on a motion for summary judgment when the party opposing the motion does not offer counter-affidavits or other evidentiary materials supporting his contention that an issue of fact remains."

10 A. Wright, Miller & Kane, Federal Practice and Procedure § 277 at 133 (1983).

The affidavits presented by the defendants here, amount to "credible evidence" which would entitle the defendants to a directed verdict if not controverted at trial. In response to the affidavits, the plaintiff has failed to come forward with any evidence whatsoever in support of her allega-

tions. As previously stated, the plain language of Fed.R.Civ.P. 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an element essential to that party's case. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Here, the plaintiff has failed to make any showing to substantiate her allegations of discrimination beyond her own conclusory allegations as such. As a result, the disagreement is so one-sided in favor of the defendants that they must prevail as a matter of law. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

In such circumstances, the cases construing Fed.R.Civ.P. 56 clearly indicate that the appropriate response is to grant the defendant's motion for summary judgment. *Fitzke v. Shappell*, 468 F.2d 1072 (6th Cir. 1972), *Thompson v. Sun Oil Co.*, 523 F.2d 647 (8th Cir.1975), *Melson v. Kroger Co.*, 578 F.Supp. 691 (S.D.Ohio 1983).

### CONCLUSION

Therefore, defendants' motion for summary judgment is GRANTED as to the defendants Frass, Miller, Huffman, and Cline. Wherefore, upon consideration and being duly advised, plaintiff's complaint against the above named defendants in their individual capacities is hereby DISMISSED.[2] Likewise, this case as to these same defendants in their official capacities,

2. Plaintiff filed suit against these defendants in their official capacity, as well as the School Board as an entity. It has been recognized that municipalities and local governing bodies can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). *See also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Said policy may be established by a single decision-maker if that person possesses final authority to establish municipal policy with respect to the action ordered. *Pembaur*, at 469, 106 S.Ct. at 1292; *Coogan v. City of Wixon*,

as well as the Delaware Joint Vocational School Board of Education is also DISMISSED.

IT IS SO ORDERED.

820 F.2d 170, 176 (6th Cir.1987). And, if a deprivation did occur pursuant to a custom or policy of the entity, it shall be held absolutely liable and not afforded qualified immunity. *Owen v. City of Independence*, 445 U.S. 622, 657, 100 S.Ct. 1398, 1418, 63 L.Ed.2d 673 (1980).

This Court finds, however, that the same rationale that applies to these various defendants in their individual capacities likewise applies to these same defendants in their official capacities and to the Board itself. Plaintiff has not offered evidence sufficient to overcome her *Anderson* and *Celotex* burdens. If these individuals acting individually allege that they at no time terminated the plaintiff which in any way violated her First Amendment rights, then these same defendants acting officially or as a Board must be free from liability. Without plaintiff able to come forward with any credible evidence to refute the affidavits put forth, this case as a whole must be dismissed.