LeBLANC, Judge.
This appeal concerns a prisoner suit in which an inmate attacks the constitutionality of Louisiana Department of Public Safety and Corrections (Department) Regulation No. 30-25, permitting guards within the Department’s facilities to strip search inmates without the requirement of reasonable suspicion or probable cause. Appellant contends this regulation violates his right to privacy under the Fourth and Fourteenth Amendments of the United States Constitution and Article 1, Section V, of the Louisiana Constitution. We affirm the trial court’s finding that Regulation 30-25 is not violative of these constitutional provisions.
Appellant, John Fulford, is an inmate serving a life sentence at Louisiana State Penitentiary, Angola, Louisiana (Angola). On September 6, 1988, appellant, as well as several other inmates, was outdoors in the prison yard, sitting or leaning on the ledge of a dormitory, which appellant acknowledges is a violation of a posted prison policy at Angola. When Angola employees, Lieutenant Marty Regel and Captain Ray Whettington, observed this activity, they ordered the inmates to get off the ledge. After the inmates complied with this order, Lieutenant Regel and Captain Whettington ordered appellant and approximately five or six of the other inmates to enter a nearby guardhouse where each inmate was strip searched. During this search each inmate was required to strip nude, lift genitals, open his mouth, turn around, squat and lift his feet and arms. Each inmate was given a written documentation of the search, a copy of which was placed in that inmate’s file.
Appellant subsequently initiated an administrative proceeding with the Department in which he complained that the strip search on September 6 was performed to harass or punish him for sitting on the ledge and that the regulation pursuant to which it was conducted, No. 30-25, was unconstitutional. In these proceedings, ap *983 pellant sought monetary damages and a ruling that Regulation 30-25 was unconstitutional. After the denial of the relief he sought in a three-step administrative proceeding within the Department, appellant filed a petition for judicial review of this administrative decision in district court. Following a hearing before a commissioner of the 19th Judicial District Court, judgment was rendered in favor of the Department dismissing appellant’s suit. This appeal followed.
Department Regulation No. 30-25 provides, in part, as follows:
3. POLICY: It is the Secretary’s policy that frequent unannounced searches of offenders, living quarters, and other areas of the institution shall be conducted as often as necessary to ensure the safety and security of the institution. Searches should be conducted in a manner that will avoid unnecessary force, embarrassment, or indignity to the offender, when possible. The objective in making frequent searches of offenders and the premises they occupy is to discover and eliminate from the institution anything considered detrimental to general safety and welfare and to ensure the safety of offenders and staff....
[[Image here]]
7. WHEN SEARCHES ARE PERMITTED:
[[Image here]]
D. Routine Strip Search[1]: Upon approval by a Lieutenant or higher-ranking employee in the chain of command, routine strip searches may be conducted at any time, without the requirement of reasonable suspicion or probable cause.
All strip searches must be documented by the employees conducting the search, including the circumstances giving rise to the search (e.g.: routine, or other) and results of the search. A copy shall be given to the offender and a copy shall be placed in the offender’s record.
All strip searches shall be conducted by institutional staff in a place out of the view of any persons other than offenders and/or employees. All strip searches shall be conducted by one officer and witnessed by at least one additional officer.
[[Image here]]
(Footnote added)
While a prisoner’s right to privacy is not totally abrogated by virtue of his incarceration, this right is substantially diminished in nature and scope because of his confinement for criminal conduct. Bell v. Wolfish, 441 U.S. 520, 545-46, 99 S.Ct. 1861, 1877-78, 60 L.Ed.2d 447 (1979); State v. Patrick, 381 So.2d 501, 503 (La.1980). As observed by the Supreme Court in Bell v. Wolfish, the “fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights.” 99 S.Ct. at 1877.
The constitutional provisions relied upon by appellant prohibit only unreasonable searches. Bell v. Wolfish, supra; State v. Patrick, supra. As explained by the Supreme Court:
The test of reasonableness ... is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. A detention facility is a unique place fraught with serious security dangers. Bell v. Wolfish, 99 S.Ct. at 1884. (Citations omitted)
Because of a prisoner’s diminished expectation of privacy and the institution’s strong security interest in having the dis *984 cretion to perform strip searches, both as a deterrent and as a means of discovering contraband and weapons, such searches may be performed without reasonable suspicion or probable cause. See Bell v. Wolfish, supra; State v. Patrick, supra; Hodges v. Klein, 412 F.Supp. 896, 900 (D.N.J.1976). Nevertheless, the search must be conducted in a reasonable manner. Bell v. Wolfish, 99 S.Ct. at 1885. In the instant case, balancing the legitimate security interests of the institution against the diminished privacy interests of the inmates, we conclude Regulation 30-25 does not violate any constitutional privacy rights of the inmates, and provides for the performance of strip searches in a reasonable manner.
Further, because there is nothing in the record supporting appellant’s contention that Lieutenant Regel and Captain Whettington performed the strip search in question as a harassment or punishment of appellant, we find no manifest error in the administrative ruling that no harassment was established. Nor do we find any merit in appellant’s complaint that the search was conducted in violation of Regulation 30-25 because all the inmates involved were strip searched in the presence of each other. Regulation 30-25 provides that a strip search should be conducted out of the view of anyone other than offenders and/or employees. However, since the search in question was conducted inside a building in which no one was present other than offenders and Angola employees, this requirement was not violated in this instance.
Finally, appellant contends that Regulation 30-25, Section 7(D), is also unconstitutional in that it requires written documentation of a strip search to be placed in an inmate’s prison file. Appellant argues that the presence of this documentation has adverse collateral consequences for an inmate, even when no weapons or contraband are found during a search. This argument lacks merit since there is no indication in the record that the mere presence of such documentation, showing that a strip search was performed without any weapons or contraband being found, has any adverse consequences upon an inmate.
For the reasons assigned, the judgment of the trial court is affirmed.
AFFIRMED.

. A strip search is defined in this Regulation at Section 6(B)(3) as: A visual search of the offender's nude body, in a place out of the view of persons who are not offenders and/or employees. The offender may be required to bend over, squat, turn around, raise his arms, lift the genitals, run his hands through his hair and/or open his mouth for inspection (the foregoing list is exemplary, not exclusive). The offender’s clothes may also be thoroughly searched prior to being returned to the offender.