**Gary ADROW, Plaintiff,**

v.

**Willie J. JOHNSON and Investigator Geanes, Defendants.**

**No. 84 C 10078.**

United States District Court,
N.D. Illinois, E.D.

Dec. 12, 1985.

Kenneth N. Flaxman, Elizabeth Dale, Chicago, Ill., for plaintiff.

Iris E. Sholder, Randolph T. Kemmer, State's Atty.'s Office, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

The plaintiff, Gary Adrow, is a corrections officer at the Cook County Department of Corrections. Adrow brought this action against Lieutenant Willie J. Johnson and Inspector Geanes, also employees of the Department of Corrections, pursuant to 42 U.S.C. § 1983. The defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### FACTS

Plaintiff worked a three p.m. to eleven p.m. shift at Cook County Jail on October 29, 1984. After plaintiff left the jail for a lunch break, Geanes received a telephone call from a person who refused to give his name. The caller told Geanes that a corrections officer who was then at lunch would be carrying narcotics into the jail when he returned. Geanes told Johnson about the call and they determined that plaintiff was the only officer who was then at lunch and would be returning to the jail.

When plaintiff returned, he was stopped by Geanes and Johnson and taken into a room, where he was searched.[1] Plaintiff was told to empty his pockets and Geanes inspected the contents. Plaintiff was then told to remove his shirt, undershirt, shoes,

---

**1.** Although the defendants dispute the extent of the search, they must accept the plaintiff's version of the search for purposes of this motion.

socks and belt and was told to roll his pants down several inches from the top. In addition, plaintiff's handcuff case and lunch were searched.

Plaintiff contends that this search, based solely on an anonymous tip, violated his fourth amendment right to be free from unreasonable searches and that he is therefore entitled to damages under 42 U.S.C. § 1983.[2]

Defendants make essentially two arguments in support of their motion for summary judgment. First, they argue that the search of plaintiff was "reasonable" within the meaning of the fourth amendment and that plaintiff's constitutional rights were not violated. Second, they argue that even if the search violated the fourth amendment, defendants acted within their qualified immunity and are therefore not liable for damages under § 1983.

**A. Reasonableness of the Search**

■ The fourth amendment prohibits only unreasonable searchs and seizures. *Carroll v. United States*, 267 U.S. 132, 147, 45 S.Ct. 280, 283, 69 L.Ed. 543 (1925). Determining whether a particular search was reasonable "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979). This balancing requires a consideration of "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is so conducted." *Id.*

Courts have recognized that prisons are "unique places 'fraught with serious security dangers.'" *Security & Law Enforcement Employees, Dist. Council 82 v. Carey*, 737 F.2d 187, 201 (2d Cir.1984) (quoting *Bell*, 441 U.S. at 559, 99 S.Ct. at 1884). It is because of these special security dangers and the attendant need for special security precautions that the ordinary constitutional requirement of a warrant based on probable cause is not required to satisfy the fourth amendment in some cases where searches have been conducted in prisons. *See, e.g., Carey*, 737 F.2d at 203. However, courts have also recognized that individuals do not lose all of their constitutional rights when they enter a prison, whether they be prisoners, visitors, or guards. *See, Bell*, 441 U.S. at 558–59, 99 S.Ct. at 1884–85 (prisoners); *Hunter v. Auger*, 672 F.2d 668, 674 (8th Cir.1982) (visitors); *Carey*, 737 F.2d at 201 (guards).

The question is whether this particular search was reasonable in the absence of a warrant. "In making this determination the reasonableness test 'requires, at a minimum, that the facts upon which an intrusion is based be capable of measurement against "an object standard," whether this be probable cause or a less stringent test.'" *Carey*, 737 F.2d at 204 (quoting *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979)). The question then becomes *what* test or standard should be required.

Defendants argue that the search of plaintiff was a "frisk," that a frisk involves a relatively small intrusion on the plaintiff, and that frisks are a routine part of prison procedures so that plaintiff's expectation of privacy is reduced.[3] Defendants argue

---

2. 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The fourth amendment to our constitution provides:

The right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

3. The Department of Corrections General Orders provide:

In order to secure the safety and security of the Department, searches shall be conducted at the shift change of all officers and civilians entering a security area of the Depart-

that there should therefore be a very low standard, or no standard at all.

Plaintiff, on the other hand, characterizes this search as a "strip search" and argues that a standard of "reasonable suspicion" should be applied. At least two courts have held that "reasonable suspicion" is the proper standard for determining whether a strip search of prison employees is constitutional. *See, Carey, supra,* 737 F.2d at 204; *McDonell v. Hunter,* 612 F.Supp. 1122, 1129 (S.D.Iowa 1985); *cf. Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1273 (7th Cir.1983) (requiring reasonable suspicion to strip search minor offender detainees).

However this search is characterized, it does not appear to fall within the description of a "frisk."[4] The Court of Appeals for the Seventh Circuit has identified "the standard frisk search" as "an outside-the-clothes check for concealed weapons." *Madyun v. Franzen,* 704 F.2d 954, 956 (7th Cir.), *cert. denied,* 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983). This emphasis on being "outside-the-clothes" is consistent with the use of the term in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the famous case that made "frisk" a standard term of fourth amendment jurisprudence. The court in *Terry* emphasized the minimal scope of the search at issue in that case:

> Officer McFadden patted down the outer clothing of petitioner.... He did not place his hands in their pockets or under the other surface of their garments until he had felt weapons....

*Terry,* 392 U.S. at 29–30, 88 S.Ct. at 1884. In the present case plaintiff claims that he was required to remove most of his clothing, a requirement totally inconsistent with the term "frisk."

It is more difficult to decide whether the search of plaintiff was a "strip search." The cases cited by plaintiff that were found to be "strip searches" involved either the removal of all of a person's clothing, leaving them entirely naked, or the baring of the genital area. *See, e.g., Carey, supra; United States v. Afanador,* 567 F.2d 1325, 1328 (5th Cir.1978). Meanwhile cases in which searches were found not to be strip searches have involved relatively small matters like the removal of a shoe or the lifting of one's skirt to the knees. *See, e.g., United States v. Brown,* 499 F.2d 829, 833–34 (7th Cir.), *cert. denied,* 419 U.S. 1047, 95 S.Ct. 619, 42 L.Ed.2d 640 (1974); *United States v. Nieves,* 609 F.2d 642 (2d Cir.1979), *cert. denied,* 444 U.S. 1085, 100 S.Ct. 1044, 62 L.Ed.2d 771 (1980).

■ Obviously there are searches that do not qualify as *either* "frisks" or "strip searches." The Seventh Circuit has stated "not every request to remove an article of clothing or to remove something from pockets will transform a search into a strip search." *United States v. Dorsey,* 641 F.2d 1213 (7th Cir.1981). However, it emphasized that the key factor in such a decision is "the level of embarrassment and intrusion" that the person searched feels. *Id.* at 1217. Unlike the individuals searched in *Brown, supra,* and *Nieves, supra,* plaintiff was asked to remove *most* of his clothing. While removing one piece of clothing may not qualify as a strip search, leaving one piece of clothing on an individual will not save that search from being classified as a "strip search." Plaintiff's claimed level of embarrassment at being asked to remove all of his clothing but his underpants (the difference between rolling his pants down and taking them off is

ment.... Searches of employees shall be limited to a frisk search, use of metal detectors and examinations of purses, bags or other articles brought into the Department.

If, in the opinion of the security staff, an individual employee or officer should be the subject of a more extensive search, the Superintendent or his/her designee of that Division shall immediately notify the Executive Di-

rector or Assistant Director in charge of Security to obtain authorization.

General Order No. 9.8. (Defendants do not contend that paragraph 2 of this regulation was complied with.)

**4.** While defendants characterize the search as a "frisk" and rely on the department regulation (see note 2), they provide no support for this characterization.

negligible) is insufficient to pose an issue of fact for trial.[5]

■ It then must be determined if the reasonable suspicion standard was met in this case. In order to justify the search of a correction officer under this standard, prison administrators "must point to specific and objective facts and rational inferences that they are entitled to draw from those facts in light of their experience." *Hunter v. Auger*, 672 F.2d 668 (8th Cir. 1982). Inchoate unspecified suspicions do not suffice. *Id.* "Factors that may be taken into account in determining reasonable suspicion are: (1) the nature of tip or information; (2) the reliability of the informant; (3) the degree of corroboration; and (4) other facts contributing to suspicion or lack thereof." *Carey*, 737 F.2d 187, 205 (2d Cir.1984) (citing *United States v. Afanador*, 567 F.2d 1325, 1329 n. 4 (5th Cir. 1978) ).

■ Applying these factors to the present case, it is clear that the defendants did not have "reasonable suspicion" when they searched plaintiff. Suspicion was based only on an anonymous tip. This could have been made by anyone for any purpose. Defendants knew nothing about the reliability of the informant. There was nothing to corroborate the tip and nothing else to contribute to defendants' suspicion.

## B. Qualified Immunity

Defendants also argue that even if this search violated the fourth amendment, they are protected by the qualified immunity accorded to certain government officials and are therefore not liable for damages under 42 U.S.C. § 1983.

"Prison officials receive qualified, not absolute, immunity from liability in a section 1983 damages suit. *Procunier v. Navarette*, 434 U.S. 555, 561 [98 S.Ct. 855, 859, 55 L.Ed.2d 24], . . . (1978)." *Lock v. Jenkins*, 641 F.3d 488, 498 (7th Cir.1981). Such officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The issue of whether the law was clearly established is a question of law for the court. *Bass v. Wallenstein*, 769 F.2d 1173, 1186 (7th Cir.1985); *Llaguno v. Mingey*, 763 F.2d 1560, 1569 (7th Cir.1985). Therefore the question becomes whether the constitutional right at issue—the right of a prison employee to be free from an intrusive search based only on an anonymous tip—was clearly established in October of 1984 when the search of plaintiff took place.

Very few opinions have addressed the issue of what standard applies to intrusive searches of prison employees. The Seventh Circuit has not considered the question. Of the cases cited by plaintiff, only *Security & Law Enforcement Employees, Dist. Council 82 v. Carey*, 737 F.2d 187 (2d Cir.1984), and *Armstrong v. New York State Commissioner of Corrections*, 545 F.Supp. 728 (N.D.N.Y.1982), address that specific issue.[6]

---

**5.** If this search did not qualify as a "strip search," it is possible that it could violate the fourth amendment under the more general balancing test applied by the Seventh Circuit in border search cases. *See, United States v. Dorsey*, 641 F.2d 1213, 1218–19 (7th Cir.1981). Rather than select a discrete standard in that case, the court preferred to balance "the level of suspicion of the agent against the level of indignity perpetrated upon the traveler." *Id.* at 1219 (quoting *United States v. Brown*, 499 F.2d 829, 833 (7th Cir.1974) ). Here the level of indignity of this intrusive search outweighs the "level of suspicion." (The similarity between prison searches and border searches has been noted. *See Carey, supra,* at 204; Note, *Constitutional*

*Limitations on Body Searches in Prisons,* 82 Colum.L.Rev. 1033 (1982) ).

**6.** *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and *United States v. Afanador*, 567 F.2d 1325 (5th Cir.1978), do not deal with searches within prisons, a context carrying its own special considerations. *See, Bell v. Woflish*, 441 U.S. 520, 558–60, 99 S.Ct. 1861, 1884–85, 60 L.Ed.2d 447 (1978). *Hunter v. Auger*, 672 F.2d 668 (8th Cir.1982), deals with strip searches of visitors to prisons, a situation related to, but distinguishable from, the present case.

In *Carey*, a divided panel of the Second Circuit held that a "reasonable suspicion" standard would apply to "strip searches" of prison employees and applied that standard to a series of actual searches that had taken place in New York prisons. However, there are several reasons why *Carey* does not "clearly establish" the law.

First, it is not an opinion of this Circuit. *See Joseph v. Brierton*, 739 F.2d 1244, 1250 (7th Cir.1984). ("One of the cases [establishing the applicable standard] was a case *from this circuit*. As the law was, *therefore*, established, the defendants were not entitled to immunity." *Id.* (emphasis added)).

Moreover, the standard in *Carey* is not the only standard that has been applied to such searches. While this Court believes it should be guided by the majority opinion in *Carey*, the dissent in *Carey* would "place no greater limitation on strip searches [of prison guards] than that they not be conducted arbitrarily, capriciously, or in bad faith." *Carey*, 737 F.2d at 213 (Van Graafeiland, J., dissenting). This lower standard would be met in the present case. *See also Gettleman v. Werner*, 377 F.Supp. 445, 451 (W.D.Pa.1974) (finding the strip search of a prison employee to be constitutional and recognizing that "a wide latitude for judgment and discretion must be extended to state officials"); *United States v. Kelley*, 393 F.Supp. 755, 756–57 (W.D.Okla.1975) (finding the strip search of a reformatory guard to be constitutional and that the guard "could have no reasonable expectation of privacy while on prison ... grounds").

■ Also, it must be noted that *Carey* was decided only three months before the search of plaintiff took place. Law enforcement personnel must be held to a reasonable objective standard of behavior. It must be a standard which speaks to what a reasonable officer should or should not know about the law he is enforcing. *Saldana v. Garza*, 684 F.2d 1159, 1165 (5th Cir.1982), *cert denied*, 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983). It is not reasonable to require prison officials to be familiar with such a recent decision of another Circuit.

Finally, the court recognizes that while plaintiff's search has been characterized as more than a "frisk search," doing so affects the interpretation of its regulations.

■ Therefore, because it was not "clearly established" that: (1) reasonable suspicion was required for intrusive searches of prison guards or (2) that the search of plaintiff was an intrusive search in violation of its "limited" "frisk search" regulations, defendants could reasonably have believed that their search of plaintiff did not violate plaintiff's fourth amendment rights. Defendants therefore acted within the scope of their qualified immunity.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment is granted and judgment is entered in favor of the defendants.