**Alphonso KENNEDY, Jr., Plaintiff,**

**v.**

**Phillip T. HARDIMAN, in his official capacity as former Executive Director of the Cook County Department of Corrections; and Roy Patrick, Defendants.**

**No. 87 C 1294.**

United States District Court,
N.D. Illinois, E.D.

May 2, 1988.

Kenneth Flaxman, Elizabeth Dale, Chicago, Ill., for plaintiff.

Joseph D. Ryan, Asst. State's Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Plaintiff Anthony Kennedy, Jr., a correctional officer in the Cook County Department of Corrections, brought this action against defendants Phillip Hardiman ("Hardiman"), in his official capacity as Executive Director of the Cook County Department of Corrections, and Roy Patrick ("Patrick"), in his personal capacity as well as in his official capacity as Superintendent of Division 5 of the Department of Corrections. Plaintiff seeks damages pursuant to 42 U.S.C. § 1983 for alleged violations of his Fourth Amendment rights arising out of a strip search performed on him by Department of Corrections officials in February, 1986. Defendants have now moved

for summary judgment. This court has jurisdiction pursuant to 28 U.S.C. § 1343. For the reasons set forth below, the motion is denied.

## FACTS

There is no dispute that on February 14, 1986, as plaintiff was about to begin his 4:00 p.m. to midnight shift at Division 5 of the Cook County Department of Corrections, Patrick and three Department of Corrections investigators—Leison Linzy, Alfred Brown and Leonard Peterson—surrounded him in the facility locker room and searched him for heroin. Nor is there any question that the search party found nothing during the search.

There is, however, quite a bit of disagreement as to the circumstances leading up to the search, the number of witnesses to it, and its scope. For the purposes of this summary judgment motion, these facts are set forth below in the manner most favorable to plaintiff, the non-movant.

Some time before noon on the day of the search, Linzy received a phone call from a man identifying himself as Agent Gary Miller of the Federal Bureau of Investigation. Agent Miller told Linzy that an Officer Kennedy would be transporting heroin into Division 5 later that day. He did not know the Officer's first name, nor did he indicate the source of his information.

Linzy then called the FBI and confirmed that the FBI employed a man by the name of Gary Miller. Linzy also checked the personnel roster and confirmed that an Officer Kennedy—Alphonso Kennedy—was assigned to work the late shift at Division 5. At this point, Linzy decided that he would undertake a search of Kennedy later that day, and informed Investigators Brown and Peterson that they would have to work a little overtime that evening.

At Linzy's request, Peterson called the FBI and spoke with Agent Miller, who told him that the tip came from a "reliable informant" and that the narcotics were to be delivered to an inmate in Division 5 named Beasley. Peterson then confirmed that there was an inmate named Beasley in Division 5.

Peterson thereafter relayed the substance of his call to Linzy. By the time he did, however, Linzy had already spoken with Patrick. At around 3:30 p.m., Patrick approached plaintiff while he was standing at roll call and ordered him into the nearby men's locker room. Patrick also contacted Linzy, Peterson and Brown and told them to come to the locker room. Once there, they conducted an extensive search of plaintiff, his briefcase and his locker. During the search, they forced plaintiff to remove all of his clothes, and, in plain view of other officers, examined his body cavities. As noted above, they found nothing.

## DISCUSSION

### The Official Capacity Claims

Defendants seek summary judgment on the official capacity claims for two reasons. First, defendants argue that, because an official capacity suit is merely another way of naming the municipal entity as a defendant, the claims against both defendants in their official capacities are redundant, and thus one should be dismissed.

■ Although defendants are unquestionably correct that including both defendants adds nothing of substance to the complaint, *Jungels v. Pierce*, 825 F.2d 1127 (7th Cir.1987), this court can see no reason for dismissing either of the official-capacity claims. By naming an individual in his official capacity, rather than merely naming the municipality itself, a plaintiff focuses the attention of the parties, the court, and perhaps later the jury, on the particular official whom he seeks to hold responsible for implementing an allegedly unlawful municipal policy. The Supreme Court has repeatedly acknowledged that naming an official in his official capacity is an entirely appropriate method of alleging municipal liability, *see, e.g., Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985); *Brandon v. Holt*, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985), and this court can find no reason to limit the plaintiff to a single official-capacity defendant. Accordingly, defendants' motion for summary judgment against one

of the official capacity defendants is denied.

Defendants next argue that summary judgment for both of them in their official capacities is required because there is no genuine issue as to any material fact. More specifically, defendants contend that the standard governing strip searches of correctional officials is "reasonable suspicion",[1] and that the phone calls from Miller to Linzy and from Peterson to Miller, as well as the confirmations of the information gleaned during these calls, established "reasonable suspicion" for the search.

■ What defendants fail to recognize, however, is that the determination of whether "reasonable suspicion" for the search existed, and whether the scope of the search was reasonable in light of the suspicion, is a question of fact for the jury. *See Llaguno v. Mingey*, 763 F.2d 1560, 1565 (7th Cir.1985) (en banc) (Posner, J.) ("The underlying issue in deciding whether the police had probable cause to do what they did is reasonableness, which is also the issue in deciding negligence—a classic jury issue."). Thus, unless no reasonable jury could find that defendants lacked reasonable suspicion, summary judgment is inappropriate. *Reardon v. Wroan*, 811 F.2d 1025 (7th Cir.1987) (probable cause determinations should in almost all cases go to the jury); *Llaguno v. Mingey*, 763 F.2d at 1565 (7th Cir.1987).

■ In this case, a reasonable jury could certainly conclude that the extensive search of plaintiff was unreasonable. The search was initiated by Patrick who knew, at most, that an FBI agent had informed Linzy that an Officer Kennedy would be bringing drugs into the prison. He did not know the source of the agent's information,[2] the first name of the accused officer, or the intended recipient of the drugs. Nor does it appear that he, or any of the investigators, had any information regarding the quantity of drugs that the officer would be bringing into the prison. Nevertheless, he authorized an extensive strip/body cavity search of an officer in a place where the officer's friends and colleagues would be almost certain to witness it. Under these circumstances, this court cannot say that the search was reasonable as a matter of law. *See, e.g., Security & Law Enforcement Employers Dist. Council 82 v. Carey*, 737 F.2d 187 (2d Cir.1984); *Adrow v. Johnson*, 623 F.Supp. 1085 (D.C.Ill.1985).

### The Individual Capacity Claims

■ Defendants seek dismissal of the claim against Patrick in his personal capacity on the grounds that he is entitled to qualified immunity and that, at the time of the search, the "reasonable suspicion" standard was not "clearly established" for searches of correctional officers at correctional institutions. *See Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985) (officials sued in their personal capacity are entitled to qualified immunity). They argue that Patrick could reasonably have believed that such searches could be conducted provided they were not undertaken in "bad faith"—i.e., with an improper motive.

Defendants' position is without merit. Every case decided prior to the February 14, 1986 search had—and every case since, has—ruled that a search of a prison official

---

1. Although, as discussed below in the context of the personal capacity claim, defendants argue that the "reasonable suspicion" standard was not "clearly established" at the time of the incident, they do concede that this standard is the one that this court should employ for the official capacity claims. *See, e.g., McDonell v. Hunter*, 612 F.Supp. 1122 (S.D.Iowa 1985), *aff'd*, 809 F.2d 1302 (8th Cir.1987) (reasonable suspicion standard governs strip searches of correctional officers); *Adrow v. Johnson*, 623 F.Supp. 1085 (D.C.Ill.1985) (reasonable suspicion standard applies).

2. In their reply brief, defendants submitted an affidavit from Agent Miller in which he indicates that he obtained the information from "an informant who had provided reliable information for one year." This testimony would provide little help for defendants, however, since there is still no indication that he ever relayed this information to Linzy or Peterson. More importantly, the affidavit is completely irrelevant here because this court has decided to grant plaintiff's motion to strike the affidavit, which defendants provided more than three weeks after the date set for the reply brief and only a week before this case was set for trial.

must be reasonable in order to withstand constitutional scrutiny. *See Adrow v. Johnson*, 623 F.Supp. 1085 (D.C.Ill.1985); *McDonell v. Hunter*, 612 F.Supp. 1122 (S.D.Iowa 1985), *aff'd*, 809 F.2d 1302 (8th Cir.1987); *Security & Law Enforcement Employers Dist. Council 82 v. Carey*, 737 F.2d 187 (2d Cir.1984); *United States v. Kelley*, 393 F.Supp. 755, 756–77 (W.D.Okla. 1975);[3] *Gettleman v. Werner*, 377 F.Supp. 445, 451 (W.D.Penn.1974). *See also McDonell v. Hunter*, 809 F.2d 1302 (8th Cir. 1987); *Hill v. Holly*, 86 C 3248 (N.D.Ill. Jan. 16, 1986) (Marshall, J.) [available on WESTLAW, 1987 WL 5685]. Furthermore, *Adrow v. Johnson*, decided just three months prior to the search here, was a case from this circuit, and involved the same correctional facility. And even the dissent in *Carey* stated that, for body cavity searches, reasonable suspicion was probably the appropriate standard. 737 F.2d at 213 (Graafeiland, J., dissenting). Accordingly, this court concludes that it was clearly established in February, 1986, that a strip/body cavity search of a prison official had to be reasonable to withstand constitutional scrutiny.

This ruling does not, however, end the inquiry here. The Supreme Court made clear in *Anderson v. Creighton*, — U.S. —, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), that in Fourth Amendment cases merely identifying the governing legal standard is not enough. Courts must also examine the particularized facts of each case to determine if the searching official could reasonably have believed that he had sufficient information to meet the standard. *See also Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir.1986) (the "right must be sufficiently particularized to put potential defendants

on notice that their conduct probably is unlawful"). Thus, despite the somewhat abstract quality of the required inquiry, a court may dismiss a personal capacity Fourth Amendment claim where the search was "reasonably unreasonable"—i.e., the searching official reasonably though erroneously believed that he had reasonable cause, in this case reasonable suspicion, for the search.

Nevertheless, this more particularized factual analysis does not rescue defendants here. The cases which have addressed the issue have unanimously agreed that a bare anonymous tip does not provide the requisite "reasonable suspicion" for an extensive strip/body cavity search such as the one involved here. *See Security & Law Enforcement Employers Dist. Council 82 v. Carey*, 737 F.2d 187, 206 (2d Cir.1984); *Adrow v. Johnson*, 623 F.Supp. 1085 (D.C. Ill.1985); *McDonell v. Hunter*, 612 F.Supp. 1122, 1129 n. 5 (S.C.Iowa 1985), *aff'd*, 809 F.2d 1302 (8th Cir.1987). *Cf. Hunter v. Auger*, 672 F.2d 668 (8th Cir.1982) (no reasonable suspicion existed to search prison visitors based on anonymous tip that the visitors would be carrying drugs). The only "corroboration" Patrick had of the anonymous tip was that an Officer Kennedy did indeed work in Division 5, a fact no more indicative that he sold drugs than that he had an inmate who did not like him. Further, there is no evidence in the record that the officer or officers who conducted the body cavity search had any more information than did Patrick regarding the identity or the reliability of the informant. Thus, this court cannot say as a matter of law[4] that the search was reasonable under clearly established legal principles.

---

**3.** Although *Kelley* suggests that the Fourth Amendment might not apply to such searches, it then upheld the search there because it was reasonable. Moreover, even if *Kelley* could be relied on for the proposition that a person relinquishes his expectation of privacy with regard to his clothes and other articles he is carrying when he enters a prison, it cannot possibly be read as holding that a person has no expectation of privacy in his body cavities merely because he works in such a facility.

**4.** The Seventh Circuit has recently noted that *Anderson* does not alter the nature of the factual

analysis in qualified immunity cases. *See Wrigley v. Greanias*, 842 F.2d 955 (7th Cir.1988). Where resolution of a factual dispute is necessary to determine whether a defendant is entitled to a qualified immunity defense, summary judgment for the official remains entirely inappropriate. *Wrigley v. Greanias*, at 958–960. Conversely, if the jury's factual findings indicate that it believes the defendant's version of the events, and if this version demonstrates that defendant did not violate clearly established constitutional rights, then defendant may be en-

## CONCLUSION

Defendants Motion for Summary Judgment is denied.

titled to judgment on his qualified immunity