Gloria PROFITT, Plaintiff,

v.

DISTRICT OF COLUMBIA,
et al., Defendants.

Civ. A. No. 90–1207.

United States District Court,
District of Columbia.

Sept. 3, 1991.

John Michael Clifford, Hamilton & Hamilton, Washington, D.C., for plaintiff.

William Randolph Morel, Office of Corp. Counsel, Dept. of Corrections, Washington, D.C., for defendants.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

Now before this Court is the Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure. The defendants allege that the plaintiff has failed to state a claim upon which the Court may grant relief and, further, that the claim against the individual defendants should be dismissed as they are entitled to qualified immunity. Upon consideration of the defendants' motion, the

memorandum of points and authorities in support of that motion, the plaintiff's opposition brief, and the representations of counsel at the May 29, 1991 hearing, the Court shall grant defendants' motion for summary judgment as to the Fourth Amendment claim and the claim for false imprisonment and shall grant the defendants' motion to dismiss as to the claims for assault and for intentional infliction of emotional distress.

### Statement of the Case

The plaintiff, an employee of the D.C. Department of Corrections, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of her Fourth Amendment rights. She also alleges the common law torts of assault and battery, intentional infliction of emotional distress and false imprisonment. Specifically, she contends that two of her superiors, Lt. Saundra Green and Sgt. Geraldine Holloway, forced her to undergo a strip search and visual body cavity search. At the time of the events alleged, the plaintiff was five months pregnant.

On December 29, 1989, the plaintiff called Lt. Green at the jail at about 9:30 p.m. and reported that she would be arriving for duty at 11:30 p.m. Approximately one half hour later, Lt. Green received an anonymous telephone call informing her that the plaintiff would be reporting to the next shift at 11:30 p.m. with one ounce of cocaine. Lt. Green, who stated in her affidavit that she had known previously of suspected drug use by plaintiff, asked the caller for his name which he declined to provide. The caller identified the plaintiff by her name. The call lasted about three minutes.

Lt. Green notified Ralph Green and Walter Durham, both higher ranking officials at the jail, of the call. She was told to notify David Roach, Administrator of the D.C. Jail. Defendant Roach told Lt. Green to pat down the plaintiff at the jail entrance and to search her further in the jail's female Receiving and Discharge Unit. In his affidavit, Defendant Roach stated that he was aware of suspicions of plaintiff's involvement with drug trafficking at the jail, communicated to him by confidential sources.

At the jail entrance, there is a sign which warns individuals entering that they will be subjected to a search. Lt. Green stated in her affidavit that other incidents had occurred at the jail where anonymous callers provided information about staff members bringing contraband into the jail. In one instance, an employee was found carrying drugs.

When the plaintiff arrived at the jail entrance at the time around that predicted by the caller, Lt. Green told her that an anonymous phone call had been received indicating that the plaintiff would be bringing contraband into the jail.

The plaintiff then voluntarily turned over her purse for inspection. One glass perfume bottle was found. This is considered contraband since no glass bottles are allowed in the D.C. Jail. After the search of the purse, Sgt. Holloway performed a pat down, to which the plaintiff consented.

After this initial search, the plaintiff was escorted to the female Receiving and Discharge Unit. The government contends that the plaintiff agreed to submit to a strip search. The plaintiff disputes this fact and, instead, argues that she first asked to consult with a union representative or have one present during the strip search. When that request was allegedly denied, the plaintiff asserts that she refused to consent to the strip search. The plaintiff alleges that Lt. Green then told her that she must either submit to the strip search or be forcibly detained and turned over to the custody of the Metropolitan Police. Lt. Green maintains that after she told the plaintiff that her refusal to submit to the strip search would be reported to the Metropolitan Police, the plaintiff then consented to the strip search which Lt. Green and Sgt. Holloway conducted.

After the strip search, the plaintiff contends that she was forced to submit to a visual body cavity search during which she was required to squat naked and cough. The government asserts that no "body cavity" search was conducted. No drugs or

contraband, other than the perfume bottle, were found in the possession of the plaintiff.

## Discussion

### I. Reasonableness of Search

■ In analyzing actions which implicate the Fourth Amendment, courts must determine if a standard of reasonableness was observed. *New Jersey v. T.L.O.*, 469 U.S. 325, 335, 105 S.Ct. 733, 739, 83 L.Ed.2d 720 (1985). This determination "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979). Factors to consider include "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it was so conducted." *Id.*

The Second Circuit directly and extensively addressed searches of correctional officers in *Security and Law Enforcement Employees v. Carey*, 737 F.2d 187 (2d Cir. 1984). In that case, the Court of Appeals held that "warrantless strip searches of correction officers within correctional facilities are not per se violations of the fourth and fourteenth amendments of the Constitution." *Id.* at 203. The Court determined that these searches fell within an exception to the warrant requirement since the legitimate governmental purpose of maintaining correctional facility security outweighs the correction officers' diminished expectations of privacy, under certain circumstances.

Other circuits have followed *Carey*'s reasonable suspicion standard for strip searches of correctional employees. *See e.g.*, *McDonell v. Hunter*, 809 F.2d 1302 (8th Cir.1987) (reasonable suspicion standard governs strip searches of correctional officers); *Adrow v. Johnson*, 623 F.Supp. 1085 (N.D.Ill.1985) (reasonable suspicion standard applies). However, as the *Adrow* Court noted, *Carey* is not the only standard that has been applied to such strip searches as the dissent in *Carey* would " 'place no greater limitation on strip searches [of prison guards] than that they not be conducted

arbitrarily, capriciously, or in bad faith.' " *Adrow*, 623 F.Supp. at 1090, quoting *Carey*, 737 F.2d at 213 (Van Graafeiland, J., dissenting); *see also Gettleman v. Werner*, 377 F.Supp. 445, 451 (W.D.Pa.1974) (upholding the constitutionality of a strip search of a prison employee and indicating that "a wide latitude for judgment and discretion must be extended to state officials"); *United States v. Kelley*, 393 F.Supp. 755, 756–57 (W.D.Okla.1975) (determining that the strip search of a prison guard was constitutional and that the guard "could have no reasonable expectation of privacy while on prison ... grounds").

The District of Columbia Circuit has not yet reached the issue of the constitutionality of strip and body cavity searches of prison employees. However, two district courts in this jurisdiction have addressed strip searches and visual body cavity searches in varying circumstances. Judge Oberdorfer upheld a routine strip search and a visual body cavity search of a prison inmate after a contact visit, finding that searches after contact visits require no reasonable suspicion. Further, the court relied on *Bell v. Wolfish* to establish that the search was reasonable as a matter of law. *Young–Bey v. Barry*, Civil Action No. 88–0705 (D.D.C. June 19, 1990).

When United States Park Police conducted a strip search of two detainees arrested for possession of marijuana, Judge Revercomb upheld the action since it was "conducted upon reasonable suspicion and was performed in a reasonable manner in accordance with both the law and the Park Police's own regulations, and did not constitute a violation of the Fourth Amendment." *Doe v. Berberich*, 704 F.Supp. 269, 270–271, n. 2 (D.D.C.1988) (experience of officers, nature of offense and fact that at time of arrest one plaintiff was holding a burning marijuana cigarette constituted reasonable suspicion).

The plaintiff in this case alleges that defendant Green conducted a visual body cavity search. Defendants dispute this fact. Despite this factual dispute, the Court holds that summary judgment is

proper since whether or not a visual body cavity search was conducted is not material to the Court's determination concerning the reasonableness of the search and whether the defendants may claim qualified immunity. The Court agrees with Judge Revercomb who held in *Doe* that "visual body cavity searches were approved on a reasonable suspicion basis in *Bell.*" *Doe,* 704 F.Supp. at 271 n. 2.

The Court, therefore, must determine whether the undisputed facts of this case constitute reasonable suspicion. Defendants must be able to point to "specific, articulable facts and rational inferences they are entitled to draw from those facts in light of their experience" to justify the search. *McDonell,* 809 F.2d at 1307. The Court will also take into consideration the context of the search and the tradition of judicial deference to prison administrators.

The telephone call provided Lt. Green with plaintiff's name, her place of employment, the shift she would work that night and with a specific quantity of cocaine she would be transporting. While other courts have declined to find anonymous telephone tips as constituting reasonable suspicion, in those instances, the telephone caller provided less information than the tip at issue in this case. *See Adrow,* 623 F.Supp. at 1086 (anonymous caller identified employee not by name but as a corrections officer who was at lunch at the time of the call); *Kennedy v. Hardiman,* 684 F.Supp. 540 (N.D.Ill.1988) (FBI Agent's telephone call providing only the employee's last name without a specific time that the employee would arrive at the prison or a specified amount of contraband he would be carrying insufficient to meet reasonable suspicion threshold). Given the specific allegations asserted by the caller, the Court holds that the tip provided a reasonable basis for suspicion.

In addition to the telephone call, both Lt. Green and Administrator Roach testified in their affidavits to having prior suspicions of the plaintiff's involvement in drug trafficking at the jail. Conversely, in both *Adrow* and *Kennedy,* the prison officials presented no independent substantiation of the telephone tips. Further, the *Carey* court found that "general rumors" received by a prison's deputy superintendent in addition to particularized suspicion of an employee satisfied the reasonable suspicion standard. *Carey,* 737 F.2d at 207. Therefore, this Court finds the defendants sufficiently substantiated the anonymous tip, and thus the combination of the call and the officials' testimony satisfies the reasonable suspicion standard.

The Court also takes special note of the established judicial deference accorded to prison administrators in these situations which "extends ... to prophylactic or preventive measures". *Whitley v. Albers,* 475 U.S. 312, 322, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986) (security measures undertaken by prison officials to quell a riot, including the nonfatal shooting of an inmate, did not constitute cruel and unusual punishment); *Bell,* 441 U.S. at 547, 99 S.Ct. at 1878 ("prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security").

Finally, in holding that the anonymous call and prior knowledge of defendants Green and Roach constitute reasonable suspicion, this Court has weighed the considerable case law upholding regulatory searches of government employees and the related policy considerations. These cases underscore the diminished reasonable expectation of privacy accorded government employees whose duties involve public safety and, therefore, the lower threshold of suspicion required to undertake regulatory searches of those employees given the compelling government interest at stake. *See, e.g., Skinner v. Railway Labor Executives Ass'n,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (post accident drug testing of railway employees permitted by Federal Railroad Administration as well as testing after rules violations or minor accidents and upon suspicion of on-duty impairment); *Nat'l Treasury Employees Union v. Von Raab,* 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989) (mandatory urinalysis upheld of Customs Service employees

whose duties are directly involved with drug interdiction or require the carrying of firearms); *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968 (D.C.Cir.1990) (upholding "reasonable suspicion" drug testing and random urinalysis testing of Department of Agriculture employees holding "safety- or security-sensitive jobs") *Jones v. McKenzie*, 833 F.2d 335 (D.C.Cir. 1987), *amended sub nom.*, 878 F.2d 1476 (D.C.Cir.1989) (probable cause not required for drug testing of District of Columbia school employees whose duties "involve direct contact with young school children and their physical safety").

## II. *Qualified Immunity*

■ When sued for damages under section 1983, state officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).[1] Most recently, the Supreme Court stated that not only must the right be clearly established, but "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *see also Siegert v. Gilley*, 895 F.2d 797, 802 (D.C.Cir.1990), *affirmed*, — U.S. ——, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Thus, as the Sixth Circuit stated, this court "must confine the issue to the determination of whether the Fourth Amendment encompasses the right of jail employees to be free from warrantless strip and body cavity searches and, if so, whether that right was clearly established at the time the searches took place." *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858

F.2d 1171, 1173–1174 (6th Cir.1988) (qualified immunity for prison officials granted since Fourth Amendment right to be free from such searches not clearly established at the time of their implementation).

Because it was not clearly established that the reasonable suspicion standard was necessary for invasive searches of prison employees or that the visual body cavity search and strip search exceeded the limitations of the D.C. Jail regulations, defendants could reasonably have believed their actions did not violate plaintiff's Fourth Amendment rights. The leading case in this area, *Carey*, was decided by the Second Circuit and the Court could locate no analogous D.C. Circuit opinion. Furthermore, the analysis of reasonable suspicion is fact-specific. Even if *Carey* was directly applicable in this jurisdiction, the case provides minimum guidance to guards faced with anonymous tips since the fact situations in *Carey* did not address such tips. While not directly on point, *Young–Bey* does shed some light on this jurisdiction's disposition toward the searches at issue. However, *Young–Bey* was not decided until after the events alleged in this action and did not involve qualified immunity. The Court, therefore, holds that all of the individually-named defendants may claim qualified immunity since the law at issue was not clearly established at the time the search occurred.

While the Court finds that the defendants' actions were reasonable under the circumstances, even if the Court ultimately determined that the facts did not support a finding of reasonable suspicion, the Court would still hold that the defendants deserve the protection provided by qualified immunity since the law concerning searches of prison guards was not clearly established in the District of Columbia.

**1.** When ruling on a motion for summary judgment, *Harlow*'s interpretation of the qualified immunity issue does not "alter the burden that Rule 56(c) of the Federal Rules of Civil Procedure places on the movant to demonstrate, as a condition of summary judgment, that the objective inquiry raises 'no genuine issue as to any material fact....'" *Martin v. Malhoyt*, 830 F.2d 237, 256 (D.C.Cir.1987), *reh. denied*, 833 F.2d

1049 (D.C.Cir.1987), quoting *Halperin v. Kissinger*, 807 F.2d 180, 188–89 (D.C.Cir.1986); *see also Briggs v. Goodwin*, 698 F.2d 486, 492 n. 2 (D.C.Cir.1983) (the "rules governing summary judgment in cases involving officials claiming a qualified immunity do not differ from those applicable in other contexts"), *vacated on other grounds*, 712 F.2d 1444 (D.C.Cir.1983).

*Doe v. Berberich,* 704 F.Supp. 269, 271 n. 2 (D.D.C.1988) ("even if the plaintiffs had alleged successfully a search conducted in violation of their Fourth Amendment rights, the doctrine of qualified immunity would have protected the defendants from individual liability").

### III. *Liability of the District of Columbia*

■ The plaintiff also seeks to hold the District of Columbia liable under § 1983. The plaintiff asserts that the defendants carried out the search pursuant to D.C. jail regulations and, as a result, the District of Columbia is liable under section 1983 as interpreted in *Monell v. Dep't of Social Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Monell* established the rule that a municipality may face direct liability for damages resulting from constitutional violations. *Id.* at 690, 98 S.Ct. at 2035–36; *see also Haynesworth v. Miller,* 820 F.2d 1245, 1271 (D.C.Cir.1987). Liability under section 1983 arises "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury." *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–38.

The Supreme Court has enunciated four conditions which must be met before § 1983 liability attaches. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). First, only acts which the municipality has officially sanctioned may give rise to liability.

*Id.* at 123, 108 S.Ct. at 224. Second, only those officials who have final policymaking authority may, by their actions, subject the government to § 1983 liability. *Id.* Whether an official has such authority is a question of state law.[2] Finally, the challenged action must have been taken pursuant to a policy adopted by the officials responsible under state law for making policy in that area of the city's business. *Id.*

Defendants stated that the search of the plaintiff was undertaken pursuant to D.C. Jail regulations which were promulgated by the Director of the Department of Corrections. Therefore, the District has officially sanctioned the searches which were conducted under a policy adopted by the officials responsible for making policy in that area of the city's business. However, the Court finds that Defendant Roach does not possess "final policymaking authority" and, therefore, his authorization of the search of plaintiff, while given pursuant to D.C. Jail regulations, does not give rise to the District's liability.[3] The Department of Corrections Director initiated the policy for searching employees for contraband[4] and distributed the corresponding Department Order 5010.3 to the various administrators within the Department. Thus, the Director of the D.C. Department of Corrections promulgated the search policy at issue and, under D.C. law, is responsible for its enforcement as the final policymaking authority.[5]

Regardless of whether Administrator Roach has "final policymaking authority", the District "cannot be held liable under

---

**2.** *Id., see also Jett v. Dallas,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) (majority of court adopted *Praproptnik's* plurality opinion that determination of the final policymaker is a question of state law to be decided by the trial judge).

**3.** *Cf., O'Callaghan v. District of Columbia,* 741 F.Supp. 273 (D.D.C.1990) (Chief of Police is the final policymaking authority of the Metropolitan Department of Police); *Mandel v. Doe,* 888 F.2d 783 (11th Cir.1989) (Delegation of municipal authority occurred when County entered into a Memorandum of Understanding with the health department and established a policy that medical care for inmates at the road prison would be provided by a physician's assistant).

**4.** *See* D.C.Code Ann. § 22–2603 (1981); *see also* D.C.Code Ann. § 24–442 (Specifying general authority of Director of the Department of Corrections to promulgate and enforce policy in D.C.'s correctional institutions).

**5.** While "special difficulties arise" if a policymaker delegates policymaking authority to another official, this Court believes that the discretion exercised by Defendant Roach does not constitute a delegation of authority from the Director of the Department of Corrections. *See Praprotnik,* 485 U.S. at 127, 108 S.Ct. at 926 ("when an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality").

§ 1983 unless [plaintiff] proved the existence of an unconstitutional municipal policy." *Praprotnik,* 485 U.S. at 128, 108 S.Ct. at 926; *see also Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *O'Callaghan,* 741 F.Supp. at 277. The Court holds that the D.C. Department of Corrections' regulations authorizing searches of its employees is not unconstitutional and, further, that the search at issue was supported by reasonable suspicion and did not violate the plaintiff's Fourth Amendment rights. Therefore, the District of Columbia faces no liability under § 1983 from either Administrator Roach's actions or from the underlying regulations which authorized his actions.

## IV. *Common Law Claims*

▪ The plaintiff has also advanced common law claims of assault and battery, false imprisonment and intentional infliction of emotional distress.

In order to make out a claim for intentional infliction of emotional distress, the plaintiff must show "extreme and outrageous conduct [which] intentionally or recklessly causes severe distress.... The conduct, in fact, must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Jackson v. District of Columbia,* 412 A.2d 948, 956–57 (D.C.App.1980). The Court holds that the strip search and the alleged visual body cavity search were conducted reasonably and in accordance with the applicable Department of Corrections regulations. The plaintiff has failed to allege facts which, if proven, could lead to a conclusion that the defendants' acts met the legal standard for a claim of intentional infliction of emotional distress; that is, conduct which was wanton, outrageous, in the extreme, or calculated to cause serious mental distress. *See Downey v. Firestone Tire & Rubber Co.,* 630 F.Supp. 676, 681 (D.D.C.1986).

▪ A defendant is liable for assault if he (1) acts intentionally (2) to cause harmful or offensive contact with another person or imminent apprehension of such a contact, and (3) the other person is thereby put in such imminent apprehension. *Rogers v. Loews L'Enfant Plaza Hotel,* 526 F.Supp. 523, 529 (D.D.C.1981).

Defendants contend that the plaintiff failed to state a cause of action for assault since the record revealed that the strip search and visual body cavity search were consensual. The plaintiff's affidavit states that she refused to consent to either search. Whether the search was consensual is immaterial to the Court's analysis given the Court's conclusion that the search was reasonable and, therefore, the defendants had authority to conduct the search. Legal authority to conduct the search is a valid defense to a claim of assault. The Court, therefore, shall dismiss the plaintiff's claim for assault.

▪ A "plaintiff suing at common law for false imprisonment must show that he has suffered an imprisonment and that the imprisonment was unlawful." *Dellums v. Powell,* 566 F.2d 167, 175 (D.C.Cir.1977). Probable cause for an arrest and detention constitutes a valid defense to a claim of false arrest [6] or imprisonment. *Gabrou v. May Dept. Stores Co.,* 462 A.2d 1102 (D.C.App.1983) (citing *Wade v. District of Columbia,* 310 A.2d 857, 862 (D.C.App. 1973)). While the plaintiff was not under arrest, the Court has found that the jail officials had reasonable suspicion to detain her for the search. Since it is not necessary to prove probable cause "in the constitutional sense," this Court finds that the defendants had, in addition to reasonable suspicion, "a good faith, reasonable belief in the validity of the ... detention" which is sufficient to defeat a claim of false imprisonment. *Gabrou,* 462 A.2d at 1103; *Wade,* 310 A.2d at 862.

### Conclusion

For the reasons stated above, the Court shall grant the defendants' Motion for

---

**6.** "There is no practical distinction between the torts of false arrest and false imprisonment." *Stevens v. Stover,* 727 F.Supp. 668, 671 n. 6

(D.D.C.1990) (citing *Curry v. Giant Food Co. of D.C.,* 522 A.2d 1283, 1287 n. 3 (D.C.App.1987)).

Summary Judgment as to the Fourth Amendment claim and the claim for false imprisonment and shall grant the defendants' Motion to Dismiss as to the claims for assault and for intentional infliction of emotional distress. In so doing, the Court holds that the defendants are entitled to qualified immunity. Further, the Court holds that the District of Columbia is not liable under Section 1983 since the search policy of the Department of Correction poses no constitutional problems. Even if the policy was unconstitutional, the jail official who authorized the search of the plaintiff holds no final policymaking authority necessary to bind the District. Accordingly, the plaintiff's case is dismissed.

### ORDER

In accordance with the Memorandum Opinion issued in the above-captioned case on August 29, 1991, it is this 29th day of August, 1991, hereby

ORDERED that

(1) Defendants' Motion for Summary Judgment as to Counts IV, V and VI is granted;

(2) Defendants' Motion to Dismiss as to Counts I, II and III are granted;

(3) The above-captioned case is dismissed.