985 So.2d 160 (2008)
David ANDERSON
v.
DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, Avoyelles Correctional Center.
No. 2007 CA 1603.
Court of Appeal of Louisiana, First Circuit.
March 26, 2008.
*161 Mark E. Falcon, Daniel L. Avant, Baton Rouge, LA, for Plaintiff/Appellant David Anderson.
L. Bruce Dodd, Angola, LA, for Defendant/Appellee Department of Public Safety and Corrections, Avoyelles Correctional Center.
Before GAIDRY, McDONALD, and McCLENDON, JJ.
GAIDRY, J.
This matter comes to us on appeal from a decision of the Louisiana Civil Service Commission (the Commission) upholding the plaintiff-appellant's termination from employment by the defendant-appellee, the Louisiana Department of Public Safety and Corrections (the Department). We affirm.

PERTINENT FACTS AND RULING OF THE COMMISSION
The plaintiff, David Anderson, was employed as a corrections sergeant with permanent status assigned to Avoyelles Correctional Center (AVC), a medium-security correctional facility operated by the Department. During the time period at issue in this matter, he was assigned to the Unit 1 D-Team, working the 5:45 p.m. to 6:00 a.m. shift.
In October 2006, approximately 18 inmates tested positive for illegal drug usage. Prior to that time, one or two positive drug tests per month were typical, with the highest monthly amount being six. Inmate informants advised prison officials that "some dirty free folk  officers" were the source of the drugs, but no specific information as to the identity of the officers was provided, other than the suggestion they were "shift employees." AVC's Chief of Security, David Bonnette, thereupon devised a system to conduct random general searches of the facility's corrections officers. The task of selecting the corrections officers to be searched under that system was assigned to the two Assistant Wardens. The Assistant Wardens used their discretion to select names from each shift roster, with the intention that all corrections officers would eventually *162 be searched. The weekly list of officers to be searched was delivered to the shift captain, who was responsible for ensuring that the general searches were conducted.
Department Regulation (DR) C-02-004 (adopted December 15, 1992) provides for five categories of personal searches of employees, each successively more intrusive: (1) pat-down searches, (2) general searches, (3) strip searches, (4) visual body cavity searches (strip searches with genital examination), and (5) body cavity searches. DR C-02004(6)(C)(2) defines a general search as follows:

General Search: A search whereby a person is required to remove his clothing down to his underwear, in order that his clothes may be inspected for contraband and his person be observed. This search shall be conducted in a private place, by another employee of the same sex, out of the view of persons other than those conducting the search.
DR C-02-004(6)(C)(3) defines a strip search as follows:

Strip Search: A visual search of a person's nude body, conducted by employees of the same sex as the employee being searched, in a private place, out of the view of persons other than those conducting the search. The person being searched may be required to bend over, squat, turn around, raise his arms, and lift the genitals. (The foregoing list is exemplary, not exclusive.) The clothing of the person being searched shall be thoroughly searched prior to returning it. (Emphasis supplied.)
DR C-02-004(7)(C) and (D) specify the permissible conditions for under which these two types of searches may be conducted:
C. General Search: General searches may be conducted without cause, with the approval of the Unit Head, his Deputy, his Assistant, or their designees.
D. Strip Search: When there is reasonable suspicion directed toward a particular employee, a strip search may be conducted. The Unit Head, his Deputy, his Assistant, or their designees must approve. Random strip searches of employees are PROHIBITED. Strip searches of groups of employees are prohibited absent reasonable suspicion directed toward the entire group. Strip searches of employees should be conducted by one officer and witnessed by one additional officer or staff member. All such searches shall be conducted by persons of the same sex as the employee(s) being searched.
Avoyelles Correctional Center (AVC) Policy No. 02-05-007 provides, in pertinent part:
I. GENERAL
A. Unless authorized by the Warden or his designee in consultation with the Unit Managers, . . . employees will only be subjected to property and or [sic] pat-down searches. ANY OTHER SEARCHES WILL BE CONDUCTED IN ACCORDANCE WITH D.R. C-02-004, SEARCHES OF EMPLOYEES . . .
. . .
IV. EMPLOYEES
A. Random, unannounced searches of employees, their personal property, and their vehicles will be conducted on a routine basis. All AVC . . . employees are subject to these searches.
B. Searches will consist of any combination of pat searches, searches of belongings, metal detector, and vehicle searches, and may involve the use of narcotic detection dogs independently or in conjunction with the drug detection booth.
About three or four weeks prior to November 8, 2006, plaintiff and other officers *163 on his shift were advised at roll call of the institution of the random general search system. Plaintiff voiced his objection to that search system and advised his shift captain that he would not submit to a general search.
About a week prior to November 8, 2006, the members of the Unit 1 D-Team then present, with the exception of a lieutenant, were subjected to general searches. Plaintiff was not on duty that day. On November 8, 2006, plaintiff's name and those of two other Unit 1 D-Team members, out of 25 members on duty, were selected for purposes of a general search. Plaintiff refused to submit to a general search of his person and clothing. He was instructed to leave the facility. By letter dated December 4, 2006, the warden notified plaintiff that his employment was terminated effective December 11, 2006, based upon his insubordination and aggravated failure to follow orders.
Plaintiff appealed his termination to the Department of State Civil Service. A hearing before a referee was conducted on May 21, 2007. On July 6, 2007, the referee upheld the termination and denied the appeal. The referee's decision became the final decision of the Commission, and plaintiff now appeals.

ISSUES PRESENTED
Plaintiff does not challenge the referee's factual conclusions. Rather, he challenges the referee's legal conclusions only. The issues presented are whether a "general search" without reasonable suspicion that the individual employee was engaged in illegal concealment was authorized by the Department's regulations; whether a "general search" requires such reasonable suspicion to be constitutionally valid under the fourth amendment; and whether the manner by which plaintiff was selected for the general search was truly random, reasonable, and non-arbitrary. Plaintiff contends that the referee erred in resolving these issues in favor of the legality of the proposed search, and in thereby concluding that plaintiff failed to obey a lawful order and that there was legal cause for his termination.

ANALYSIS

Was the General Search Authorized by the Regulations?
Plaintiff contends that AVC No. 02-05-007(IV)(A) and (B), read together, preclude random, unannounced general searches, as general searches are not included in the types of searches mentioned in AVC No. 02-05-007. If AVC No. 02-05-007(IV)(B) is to be read literally, it would supersede and effectively abrogate DR No. C-02-004(7)(C). Such a reading would lead to an absurd result, considering that AVC No. 02-05-007 itself repeatedly refers to DR No. C-02-004, which clearly authorizes general searches "conducted without cause," provided they are approved by a proper supervisory officer of the facility. Rather, AVC No. 02-05-007(IV)(B) must be read together with Paragraph 1(A). Doing so, we conclude that the provisions are readily reconciled. In addition to the usual property and patdown searches, AVC No. 02-05-007(1)(A) unequivocally authorizes any other type of search of employees described in DR No. C-02-004, if "authorized by the Warden or his designee in consultation with the Unit Managers." The phrase "conducted without cause" does not preclude a general search conducted on a random basis. Plaintiff's assignment of error on this issue is without merit.

Was the General Search an Unconstitutional Strip Search?
The fourth amendment to the U.S. Constitution and the corresponding provision *164 of Louisiana's constitution, Article I, § 5, prohibit only "unreasonable searches." The U.S. Supreme Court has explained:
The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. A detention facility is a unique place fraught with serious security dangers.
Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979).
In terms of the invasion of personal rights, a search's intrusion must be viewed in the context of the individual's legitimate expectation of privacy. Allegheny County Prison Employees Indep. Union v. County of Allegheny, 315 F.Supp.2d 728, 737 (W.D.Pa.2004). The test for determining the legitimacy of an expectation of privacy involves both subjective and objective considerations: "[T]here is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as `reasonable.'" Katz v. U.S., 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967). In cases involving employees of incarceration facilities, courts have repeatedly recognized that such employees have diminished expectations of privacy while within the confines of facilities requiring the implementation of extreme security measures. See Allegheny County Prison Employees Indep. Union, 315 F.Supp.2d at 737-38.
The jurisprudence generally defines a strip search as the exposure of a person's naked body for the purpose of a visual or physical examination. See Allegheny County Prison Employees, 315 F.Supp.2d at 739. See also, e.g., Sec. & Law Enforcement Employees, Dist.Council 82 v. Carey, 737 F.2d 187, 200 (2nd Cir.1984), and Fulford v. Regel, 582 So.2d 981, 983 n. 1 (La.App. 1st Cir.1991). Plaintiff cites Adrow v. Johnson, 623 F.Supp. 1085 (N.D.Ill.1985), in support of his contention that the proposed general search of his person was a "strip search," or its functional equivalent, requiring the existence of reasonable suspicion specifically directed toward him. In Adrow, the federal district court observed that "[o]bviously there are searches that do not qualify as either `frisks' or `strip searches.'" Id. at 1088. The court further noted that "[w]hile removing one piece of clothing may not qualify as a strip search, leaving one piece of clothing on an individual will not save that search from being classified as a `strip search.'" Id. The court concluded that the search of the corrections officer down to his underwear, based upon an uncorroborated anonymous tip, without "reasonable suspicion," violated the fourth amendment. It should be noted, however, that the search in Adrow was limited to only one officer, and did not occur in the unusual context of the present case, where the informant's tip regarding illicit smuggling of drugs was indirectly corroborated by the unprecedented increase in positive inmate drug tests.
Despite plaintiff's attempt to characterize the general search at issue as a "strip search" or "partial strip search" for constitutional purposes, we conclude that the nature of its intrusiveness does not warrant subjecting this type of search, under these particular circumstances, to the reasonable suspicion standard imposed upon the strip searches and "strip frisks" (visual body cavity searches) in Carey. While plaintiff claims that he had an actual subjective *165 expectation of privacy, evidenced by his prior objection to the proposed general search plan and his prior military experience, his claim in that regard must be viewed in the context of his actual employment expectations and environment. At the hearing before the referee, plaintiff defended his objection to undergoing the general search based upon his belief that "probable cause" or "reasonable suspicion" was required before AVC was entitled to "violate" him through a general search.[1] Later, however, under cross-examination, he admitted that he understood and believed that the unprecedented increase in positive drug screen tests constituted reasonable suspicion or probable cause, from his standpoint, for AVC to institute the general search procedure at issue. Thus, plaintiff's professed subjective expectation of privacy is suspect at best.
Reviewing the characteristics of the proposed general search from the objective standpoint of society in general, we cannot conclude that society in general would recognize plaintiff's expectation of freedom from a random general search, under the circumstances present in this case, as reasonable. Nor can we conclude that society in general would consider the degree of disrobing required in this context as an unreasonable "violation" of one's person. It is undisputed that the number of positive drug tests on inmates was exceptionally high for the month at issue, and that this unprecedented situation, combined with the inmate informants' statements, prompted the decision to conduct the general search. Given the particular factual circumstances relating to each relevant consideration of the Bell criteria, we conclude that the random general search procedure was reasonable and did not violate plaintiff's constitutional rights. To the extent that Adrow suggests a different result, as plaintiff contends, we consider it unpersuasive and distinguishable. Similarly, we find Carey distinguishable on its facts.

Was the General Search Random, Reasonable, and Non-Arbitrary?
We have reviewed the testimony and other evidence in the record relating to the selection process utilized in the general search system. While we agree with plaintiff that a computer-generated selection system, or some other "blind" system for drawing names at random would have been preferable, we cannot conclude that the system devised to eventually search all officers was not sufficiently random, or unreasonable and arbitrary under the circumstances.

CONCLUSION
Plaintiff received and was familiar with the Correction Services Employee Manual, setting forth the employee rules and disciplinary procedures, and was admittedly familiar with the Department's regulations. He was also a U.S. Army veteran, and presumably familiar with the importance of discipline and the duty to obey the lawful orders of a superior officer. By its very nature, the refusal to obey a direct order impairs the efficient operation of a public service. Ben v. Housing Auth. of New Orleans, 03-1664, p. 5 (La.App. 1st Cir.5/14/04), 879 So.2d 803, 807. A security guard at a penal institution, a quasi-military installation, is held under a strict duty to obey his superior's lawful orders. Malone v. Dep't of Corr., La. Training Inst. Ball, 468 So.2d 839, 840 *166 (La.App. 1st Cir.1985). We conclude that legal cause existed to support plaintiff's termination from employment.

DECREE
The Commission's decision was not arbitrary, capricious, or characterized by an abuse of discretion. We accordingly affirm the decision of the Commission. All costs of this appeal are assessed to the plaintiff-appellant, David Anderson.
AFFIRMED.
NOTES
[1] Another purported reason advanced by plaintiff for his own refusal to submit to the general search was his "personal" objection to a potential general search of his wife, also an AVC employee.